**UNITED STATES of America**

v.

**Lonnie DAWSON.**

**No. 87–1352.**

United States Court of Appeals, Third Circuit.

Argued June 20, 1988.

Decided Sept. 21, 1988.

Carol A. Koller (argued), Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant.

Paul J. Van De Graaf (argued), Asst. U.S. Atty., U.S. Attorney's Office, Philadelphia, Pa., for appellee.

Before GIBBONS, HIGGINBOTHAM and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant Lonnie Dawson seeks review of a district court order denying his motion to vacate or modify his sentence. He petitioned the district court under 28 U.S.C. § 2255, claiming that his trial counsel was ineffective for failing to call or interview several potential witnesses. Appellant argues that the district court erred in denying his motion without first conducting a hearing on the issue. We have jurisdiction under 28 U.S.C. § 1291. Because we agree that at least some of appellant's allegations raise a substantial challenge to his convictions, we will remand to the district court for a hearing.

### I.

April 14, 1982, appellant Dawson was indicted on charges related to the distribution of narcotics and the attempted shooting of a federal informant. Specifically, he was convicted of engaging in a continuing

criminal enterprise, distribution of heroin and methamphetamine, use of a telephone in distribution, obstruction of justice and conspiracy to violate civil rights. His codefendants were William Hoskins, with whom he allegedly ran the distribution enterprise, and Robert Hardwick and Kenneth Shank, who worked for appellant and Hoskins.

The government's case rested principally on recordings and wiretaps, and the testimony of Lawrence Simons. Simons testified that, after his release from prison, he worked at a convenience store operated by appellant and Hoskins, and also carried drugs and money for them. Simons testified that, as part of his illegal activities, he sometimes delivered narcotics to Michael Johnson. After Simons became an informant in 1982, he was "wired" several times for meetings with appellant, including one on February 23, 1982. Simons testified that he met appellant at the home of appellant's girlfriend, Yasmin Rollins, then went to another location to receive narcotics. Government agents confirmed that the meeting took place. A recording of the meeting supports Simons' testimony. Additionally, appellant's fingerprints were identified on narcotics delivered two weeks later.

Simons also testified to an incident which occurred on April 4–5, 1982. Simons and appellant met a third man at a bar, who showed them large quantities of methamphetamine stored in an upstairs room. Simons also had a photograph of himself, appellant and the third man taken at the bar. They were also joined by Robert Hardwick and James Watt, an unindicted coconspirator. Simons was wearing a transmitter and was carrying marked money, most of which he said he had given to appellant. DEA agents testified that they saw Simons and appellant, heard their conversation on the transmitter, and saw Simons and appellant leave the bar around one a.m. (There is no recording available since the agents had used up the tapes before the pair arrived at the bar.) Outside the bar, the agents attempted to contact Simons. Simons, believing appellant had observed the contact, left the area.

A state police officer testified that, at 1:20 a.m., he saw three men in a car. The car matched the description of that driven to the bar by Hardwick and Watts. One man was wearing an overcoat. Another got out of the car and the car drove off. The officer approached the man who remained, who identified himself as Watts. Watts was carrying the bulk of the marked bills.

Several witnesses testified that they saw two men together, not just one, during and after the chase. Simons testified that, while driving early that morning, he was chased by two men in a large black car and shot at. The chase ended when the pursuing car struck a telephone pole. Simons testified that, based on seeing the relative sizes of the two pursuers, they were Hoskins and Watts. A resident testified that, at 4:00 a.m., he heard the crash and saw two men leave the site, one wearing a long coat, and walk in the direction of Chester, Pennsylvania. A waitress at a Chester restaurant about two miles away from the crash site testified that two men entered at about 4:45 a.m., one wearing a light-colored jacket. They ordered sandwiches and one used the phone. They left in a dark car which had pulled up in front of the restaurant. At the trial, the waitress tentatively identified appellant as one of the two men, and confirmed that she had made a prior identification of him from photographs. The government also recorded a call that morning to Hoskins, allegedly from appellant, referring to the chase. Hoskins reported the car stolen at 4:50 a.m.

A second call later that morning was made to Rollins, allegedly by appellant. The caller asked Rollins to meet him at a local Sheraton and "bring us a hit". At the Sheraton, federal agents arrested appellant and Hardwick hiding in the back of Shank's car. Rollins was arrested also. A gun was found in her pocketbook.

Appellant was convicted on November 1, 1982, by a federal jury. He was sentenced to 134 years in prison and fined $230,000. After the conviction was affirmed on appeal, he moved for a reduction of sentence. On January 23, 1985, the district court re-

duced appellant's sentence to 65 years in prison—50 on the CCE charge, 10 on the civil rights charge and 5 for obstruction—and reduced the fine to $100,000. August 12, 1986, appellant filed a petition to modify, reduce or set aside his sentence under 28 U.S.C. § 2255.

## II.

### A.

The petition alleges that appellant's trial counsel, Mr. Preminger, failed to call or even interview several prospective witnesses. He alleges that Preminger failed to interview Michael Johnson, though appellant told him to. A federal agent testified that he had made recordings of conversations between Johnson and appellant related to narcotics transactions, which were part of the indictment. In an affidavit, Johnson states that he was prepared to testify that he had no illegal dealings with appellant, and that the conversations actually were between Johnson and Freddie Rollins. (Freddie Rollins, Yasmin's brother, died two months before the trial.) Johnson himself was not indicted until 1983. He pleaded guilty to those charges, he claims in part out of fear that otherwise he might get a sentence as long as that given to appellant.

Yasmin Rollins' affidavit states that she could have supported Johnson's testimony that his conversations were with Freddie Rollins. She also states that conversations allegedly between her and Dawson were with Freddie, and that she was present at other conversations with her brother alleged to be with Dawson. She alleges she could have testified that the February, 1982 transaction at Rollins' home took place between Simons and Freddie, while appellant was in another room. She claims she told trial counsel she was willing to testify, but that counsel never contacted her.

Appellant also submitted the affidavit of his sister, Wendy Dawson, who claims that she was working with appellant in Philadelphia during most of the day on March 18, 1981, a date on which appellant allegedly drove to Delaware to pick up a methamphetamine component. Wendy Dawson's affidavit states that she has time cards which support her assertion. She states that Preminger was "supposed to call me concerning a picture" the government contends was taken of appellant in Delaware, but that Preminger never called. Appellant also alleges that Wendy Dawson's husband, David Jones, would have testified that the picture was of him. Jones did not submit an affidavit, and appellant does not allege that Preminger knew of this testimony.

Appellant alleges that Watts, "if called to testify," would have said that he received the marked money directly from Simons, and that appellant was in no way involved. Appellant also states that Hardwick testified on June 23, 1982, that he alone chased and shot at Simons, then later called appellant to pick him up at the restaurant. Appellant alleges that Preminger was aware of this testimony but "made no attempt to utilize this at trial," such as by moving for a severance.[1] Last, appellant alleges that he asked counsel to interview Evelyn Davis, but he did not do so. Davis, he alleges, would have testified that she saw Simons "manufacturing evidence against defendant Dawson." No more is specified.

### B.

The district court denied the motion without a hearing. Noting that it did not have his testimony, the court assumed that Preminger knew of the availability and substance of all the testimony. The court nevertheless found "inconceivable" that Johnson, not indicted at that time, would testify that he was guilty of serious charges. Also, because the tapes were

---

**1.** Appellant also alleges, though not expressed in his petition, that his counsel should have conducted a spectrographic (voice) analysis of the tapes and requested a severance from Hard-wick, presumably to allow the use of Hardwick's prior confession. Resolution of these claims follows resolution of the main claim.

"over-whelmingly incriminating as to Johnson," the testimony would have been subject to "serious attack." The court concluded that a decision not to "pursue Johnson as a defense witness" was not an unreasonable tactical choice. The court made the same conclusions about Yasmin Rollins and David Jones, especially regarding their likely credibility in view of their connection to appellant. The court also notes that the jury had the opportunity to hear the tapes and determine if the voice on them was appellant's, and that the federal agents observed appellant with Simons during the February 1982, transaction.

The court dismissed the affidavit of Wendy Dawson for three reasons. First, appellant did not allege that Preminger knew of her testimony; second, supporting documents she mentions in her affidavit were not produced; and third, as appellant's sister, her credibility is questionable. The court dismissed the allegations relating to Evelyn Davis as too vague.

The court dismissed the allegations related to Watts. First, the court notes that Dawson did not allege Preminger was aware of this testimony. Second, the court doubts that Watts would not have invoked his fifth amendment privilege. Third, the court notes that the tapes show this allegation to be untrue. For instance, on the tapes, the voice identified as that of appellant asks Watts, on finding out he was stopped by police, if they took the money. The court dismissed Hardwick's potential testimony because, as a codefendant, he was unavailable as a witness, and his statements were "overwhelmingly contradicted" by four witnesses and the tapes.

Therefore, on the whole, the court concluded that trial counsel did not act unreasonably in failing to pursue the testimony of any of these witnesses. The court also noted that the evidence of appellant's guilt was "overwhelming," so that even had the various witnesses testified, defendant would have been found guilty. The court denied appellant's motion on May 5, 1987, and appellant filed a timely notice of appeal.

## III.

A petitioner seeking habeas relief on the grounds of ineffective assistance of counsel

[f]irst ... must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In a pre-*Strickland* decision, this Court has set forth the guidelines for determining whether a hearing should be held on a claim of ineffectiveness of counsel raised in a § 2255 motion. *Government of the Virgin Islands v. Bradshaw*, 726 F.2d 115 (3d Cir.1984). We held in *Bradshaw* that, although the district court has discretion to decide whether to hold a hearing on such a claim, the court must accept as true the nonfrivolous allegations in the petition, and order a hearing unless the record as a whole "conclusively show[s] that the prisoner is entitled to no relief." *Bradshaw*, 726 F.2d at 117; *see also* 28 U.S.C. § 2255.

The *Bradshaw* test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffec-

tive assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland,* then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not *conclusively* fail either prong of the *Strickland* test, then a hearing must be held. Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice—first, as a threshold analysis of *all* claims on a limited record, and then again only on colorable claims after full factual development of those claims.

## A.

◼ While certain allegations can be disposed of as insufficient, the petition does raise significant factual issues. The district court correctly declined to consider the unelaborated statement that Evelyn Davis saw Simons "manufacturing evidence." Appellant has yet to indicate what that evidence was, much less how it was being "manufactured". The vagueness of this allegation stands in contrast to most of appellant's other allegations, and is *too* vague to warrant further investigation in a court.

◼ The claims that David Jones and James Watts will testify were also properly dismissed. Appellant never contends that Preminger was or should have been aware of their testimony. This failure might seem like a technical pleading requirement, typically not significant. However, appellant does allege, directly and indirectly, that his trial counsel was aware of the testimony of other witnesses. Also, appellant never alleges that these witnesses were ready to volunteer their testimony, but that "if called," they would have testified. Neither submitted an affidavit stating that he would have testified. In view

of these facts, as well as the facts that their testimony would have involved confessions of criminal behavior, the district court properly declined to consider these allegations in determining whether a hearing was required.

◼ However, we cannot agree that Wendy Dawson's testimony may be dismissed. The district court dismissed her affidavit as frivolous because there is no allegation that Preminger knew of her testimony. In her affidavit, she alleges that Preminger "was supposed to call me." While she does not state that she formed this belief based on contact either with Preminger or with her brother (who then should have so informed Preminger), this lack should not defeat her allegations at this stage. To dismiss this testimony on this ground does impose an unnecessary pleading requirement. Similarly, the district court's reliance on the absence of time cards, referred to in the affidavit, is also misplaced. The affidavit does not say it is submitting the cards, but that they are available. Apparently, no one requested them, and there is no reason to think that a layperson would know they were necessary to the affidavit (as opposed to at a hearing). Also, the cards support the testimony, but are not necessary to it. We do not find that the failure to include the cards renders the offer of testimony frivolous.

◼ Similarly, while Johnson and Rollins are subject to indictment for their testimony, and so could have pleaded the fifth amendment at appellant's trial, both stated that they would have testified. Rollins' testimony that the voice on the tapes is that of her brother does not itself incriminate her, and she was and is not under indictment. Though her testimony would be an admission that she was part of the conversations taped, she has made this admission in her affidavit. Her involvement also is well-documented on the tapes. Similarly, the court's conclusion that Johnson would have refused to testify is undercut by his later guilty plea. Though the plea may have been a product of appellant's conviction—Johnson is unclear on this point—the very uncertainty is cause for a

hearing. The district court did not have an undisputed basis for concluding that these affiants would not have testified if called. Therefore, this court must hold their offers of testimony not frivolous and worthy of a hearing.

Last, appellant's allegations regarding Hardwick are not frivolous. The district court concludes that he was unavailable because he was a codefendant. The court ignores the fact that appellant did not seek his testimony, but his prior confession, through a severance. That the petition refers only to counsel's failure to "use" the confession, and does not mention severance, should not defeat the allegation. Though appellant was represented in filing his petition, there is no reason to require the petition to specify the proper procedural motions needed to use certain testimony. The primary allegation is that counsel failed to seek to introduce potentially exculpatory evidence; that he also failed to take the procedural steps necessary to introduce that evidence only adds to this failure. The factual allegation is not frivolous.

### B.

Presented with the nonfrivolous allegations of the petition, we must consider whether these allegations conclusively fail to show ineffective counsel. We evaluate first whether "counsel's performance was deficient." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In this regard, the Supreme Court has stated that

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.... The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.

466 U.S. at 690–91, 104 S.Ct. at 2066. According to the allegations, counsel never even interviewed these witnesses. There is no testimony on the record as to why coun-sel acted as he did, if indeed he failed to investigate these witnesses. Thus, though the district court found that "it was reasonable" for counsel to assume they would invoke their fifth amendment rights, the record does not show that counsel ever made that assumption. In the absence of any evidence on the issue, this court will not speculate on trial counsel's motives, and the district court erred in so doing. *See Government of the Virgin Islands v. Nicholas,* 758 F.2d 1073, 1082 (3d Cir.1985). We must therefore consider whether the undisputed facts of this case conclusively demonstrate that appellant's trial counsel made a reasonable, strategic decision in failing to investigate affiants' testimony. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066.

We cannot hold that the nonfrivolous allegations of the petition fail to demonstrate ineffective counsel. On this record, counsel could not avoid investigation on the grounds that the affiants might invoke the fifth amendment if called to the stand. First, this argument does not apply to the testimony of Wendy Dawson or the introduction of Hardwick's prior testimony. Second, the reasonableness of the argument, where it applies, is undercut by the affidavits of Johnson and Yasmin Rollins. As we stated above, their promises to testify cannot be dismissed, and deserved at least some consideration by trial counsel.

The district court also found that all witnesses would have "apparent" credibility problems if called to testify, so that trial counsel was justified in failing to call these witnesses. However, the record contains no evidence that appellant's trial counsel considered these facts in declining to investigate the witnesses. The only pieces of record evidence on which to base the credibility problem are the affiants' relationships with appellant and (except for Wendy Dawson) their criminal activity. This is insufficient to determine that, as a matter of law, the testimony is not believable. Because the record discloses no other basis from which trial counsel could infer lack of credibility, we cannot say that counsel was necessarily excused from investigation.

Determining credibility based solely on relationships, not on an interview or other information about the specific witnesses, is not necessarily reasonable trial conduct.

Credibility is a question of fact to be decided by the finder of fact based on face-to-face observation. No court or jury has seen these witnesses, and we have before us only their affidavits and a little of their personal histories. The record evidence is insufficient to hold these witnesses not credible as a matter of law, if indeed such a finding is ever proper. We therefore consider the allegations of the petition as if the proposed testimony was provided by credible witnesses. We find that appellant's allegations may support a finding that his trial counsel failed to provide the assistance required by *Strickland.*

### C.

A finding of prejudice "requires a showing that counsel's errors ... deprive[d] the defendant of ... a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The district court found the evidence against appellant on all charges "overwhelming." Although we note that appellant does not raise a challenge to the most serious charges against him, we cannot agree that appellant has failed conclusively to demonstrate prejudice.

If the witnesses offered in the petition do testify and are credible, they may challenge the reliability of the trial verdict on several counts. Wendy Dawson's testimony, if credited, could have cleared her brother of one of the many substantive drug charges against him. The testimony related to Michael Johnson undermines the government's case on the telephone facilitation charges, which relied largely if not wholly on the tapes. That the jury themselves heard the tapes and identified the voices is not conclusive. Freddie Rollins was dead at the time of the trial, so that the jury never heard his voice to compare it with that of appellant. (The government does not identify Freddie Rollins' voice on

any of the tapes at issue.) The credibility of these witnesses and the force of their testimony must be determined in court. Therefore, the district court erred in refusing to hold a hearing on these allegations of the petition.

■ Appellant's petition does not, however, raise sufficient doubt to require a hearing on all the non-frivolous allegations. For example, the voice identification regarding the tapes used to support the February 23, 1982 charge (Count 4) is supported by overwhelming evidence. Both the testimony of Simons and the DEA agents who observed appellant's coming and goings corroborate the persons and conversations identified in the tapes. All the evidence relating to the transaction supports a finding that appellant's is the voice on the tapes, and appellant makes no direct allegation otherwise. In fact, appellant makes no challenge to several of the narcotics distribution convictions.[2] The district court need not conduct a hearing on these allegations and counts.

■ Likewise, Hardwick's prior confession can cast little doubt on appellant's presence at the shooting. Hardwick stated that he acted alone. Every other account agrees that there were two people in the car which pursued Simons: Simons saw two figures, a witness to the accident saw two men get out, two men ordered from the waitress (and were picked up by a third); the police officer who stopped Watts saw two other men in the car. Though the government had one eyewitness identification of appellant—the waitress, whose memory was indistinct at the trial—the government's case overwhelmingly contradicts Hardwick's testimony that Hardwick acted *alone.* Therefore, appellant's claim that he was improperly convicted on the charges related to the shooting are without merit and require no hearing.

■ Last, the unchallenged convictions more than demonstrate the continuing

---

2. Appellant's brief makes no challenge to his convictions on counts 5 and 6, for example (the latter charge being supported by fingerprint evidence). As shown, he raises an insufficient challenge to his convictions on counts 4, 19 and 20.

criminal enterprise. The telephone charges provided relatively insignificant evidence (compared with, for example, appellant's fingerprints on bags of heroin, the taped conversations with Simon, and the attempted shooting). That appellant may not have been involved with the one methamphetamine pickup does not challenge the extent of his involvement in other drug transactions. As appellant admits, much of the government's case depends on the credibility of Simons. In convicting appellant, the jury consistently credited Simons' testimony. Wendy Dawson's proposed testimony does not challenge Simons' credibility, much less the substantial evidence of appellant's ongoing involvement in narcotics trafficking, and so does not challenge the CCE conviction on these grounds.

Appellant can only be convicted of operating a continuing criminal enterprise if he acts "in concert with five or more other persons with respect to whom such person occupies a position of organizer...." 21 U.S.C. § 848(b)(2)(A). At argument, appellant suggested that, without the involvement of Johnson, there were fewer than five persons involved in the enterprise. The evidence introduced at trial shows otherwise. Hoskins managed the operation with appellant. They supervised indicted coconspirators Hardwick and Shank, and unindicted coconspirator Watts, as well as the informant Simons. Last, the tapes and other evidence—as well as her affidavit—make clear that Yasmin Rollins was well aware of appellant's narcotics trafficking. The evidence also showed that, at appellant's orders, she brought a gun to the hotel where he was hiding. Even if she were not a part of appellant's enterprise before this incident, an unlikely conclusion, the incident is sufficient to find her a part of the enterprise. Appellant's assertion that the jury may have relied on Johnson as a necessary fifth member of the enterprise is mere speculation. Such speculation standing alone is insufficient to challenge the conviction.[3]

## IV.

Appellant raises nonfrivolous challenges to several of his convictions. These challenges deserve a hearing in open court, and the district court erred in concluding otherwise. We will therefore reverse the entry of judgment against appellant and remand this case to the district court, so that it may hold a hearing consistent with this opinion.

---

**3.** Appellant also challenges the admissibility of certain wiretap evidence, claiming that his trial counsel's failure to object to its introduction amounts to ineffectiveness. 18 U.S.C. § 2516(1) provides that a wiretap application may be authorized only by "[t]he Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General *specially designated* by the Attorney General." (Emphasis added). Jensen, the AUSA of the Criminal Division, authorized these wiretaps. The attorney general had designated the AUSA of the Criminal Division to issue wiretaps before Jensen took the job. Appellant contends that this "special designation" must be done to an individual, not an office, so that these wiretaps were improper and should have been suppressed. Every court of appeals that has considered the argument has rejected it. *See United States v. Lambert,* 771 F.2d 83, 90 (6th Cir.) (collecting cases), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985). Appellant provides no evidence that Congress intended otherwise, and we find his argument without merit.