**Beverly LANGSTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV. A.2000–CV–1619.

United States District Court, E.D. Pennsylvania.

June 27, 2000.

Anne Whatley Chain, Asst. U.S. Atty., Philadelphia, PA, for Plaintiff.

Steven A. Morley, Bagia and Morley, Philadelphia, PA, for Defendant.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

Beverly Langston ("Langston") brings this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. For the following reasons, I will deny Langston's motion.

## I. Background

On May 28, 1997, Langston was indicted by a federal grand jury on charges of conspiracy to distribute and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 846 and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On June 12, 1997, Langston entered a plea of not guilty to the counts in which she was charged. On July 31, 1997, Magistrate Judge Smith ordered that Langston's conditions of bail include drug counseling and/or treatment.

On September 10, 1997, the government filed a motion for a psychiatric examination of Langston. On September 12, 1997, Judge Gawthrop ordered that Langston undergo a prompt psychiatric examination to determine if she was competent to understand the nature and consequences of the proceedings against her and to assist in her defense. On the same day, Judge Gawthrop severed Langston's case from her co-defendants' cases. On September 25, 1997, pursuant to the Court's order that Langston undergo a competency examination, Russell E. Phillips, M.D., conducted a psychiatric evaluation of Langston. In an October 2, 1997 report, Dr. Phillips opined that "Ms. Langston is competent to stand trial. She understands the charges against her, understands the consequences of conviction on these charges, and is capable of assisting her attorney in her own defense."

On November 5, 1997, Langston was placed at Eagleville Hospital, a residential drug treatment program, and she was discharged on December 12, 1997. After her discharge from Eagleville Hospital, Langston was placed in a halfway house. De-

spite Judge Gawthrop's order that Langston was to remain at the halfway house for a minimum of ninety days, Langston left the halfway house after one night. On February 6, 1998, Langston's trial counsel, Doloras Troiani, Esq. ("Troiani"), petitioned the court to withdraw as counsel. On the same day, after a conference call, Judge Gawthrop ordered that Troiani's motion to withdraw was denied.[1]

On February 10, 1998, the government requested a second psychiatric examination of Langston and on February 11, 1998, Judge Gawthrop ordered a second examination. Pursuant to the Court's order, on February 13, 1998, John S. O'Brien II, M.D., J.D., completed a psychiatric and substance abuse evaluation of Langston. In a February 16, 1998 report, Dr. O'Brien, concluded that Langston "is able to understand the nature and object of the proceedings against her and to participate and assist in her own defense. It is therefore my opinion that she is currently competent to stand trial."

Prior to jury selection, the government's counsel noted on the record that Langston was found competent after a psychiatric evaluation. Additionally, government's counsel confirmed that Troiani believed her client was prepared to proceed, Troiani was able to consult with Langston and Langston was able to assist in her own defense. *See* Tr. Feb. 18, 1998 at 3.

On February 23, 1998, a jury found Langston guilty on both counts (conspiracy to distribute and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 846 and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2). On May 21, 1998, Langston was sentenced by Judge Gawthrop to 100 months imprisonment, five years of supervised release, and a special assessment of $200.00. On June 1, 1998, Langston filed a notice of appeal. On January 11, 1999, the Third Circuit affirmed the judgment of the district court. On March 8, 1999, Langston filed a *pro se*

motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. After the untimely death of Judge Gawthrop, this case was reassigned to my docket. On November 16, 1999, I appointed counsel to represent Langston.

On February 25, 2000, I held oral argument on Langston's motion for a new trial with appointed counsel for Langston and counsel for the government present. At oral argument the parties agreed, on the record, that Langston's *pro se* motion for a new trial would be considered a § 2255 motion to vacate, set aside, or correct her sentence. *See* Tr. at 3. Langston's counsel argued that Langston's prior counsel was ineffective as she did not request a full competency hearing before trial and Langston was denied due process because of this failure to conduct a pre-trial competency hearing. *See* Tr. at 4–6. Langston's counsel argued only the issue regarding Langston's competency and left the court to evaluate Langston's additional claims, raised in her *pro se* motion for a new trial, on the papers filed by Langston and the government. *See* Tr. at 4. On April 10, 2000, I ordered the parties to submit additional briefing.

## II. Standard

Section 2255 allows federal courts to vacate, set aside or correct a sentence of a prisoner:

> in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ...

28 U.S.C. § 2255.

## III. Discussion

Langston alleges that she is entitled to relief pursuant to § 2255 because: (A)(1)

---

1. On February 11, 1998, Judge Gawthrop granted the government's motion for a contin-

uance and noted that defense counsel's petition to withdraw had been withdrawn.

her substantive due process rights were violated because she was incompetent to stand trial, (2) her procedural due process rights were violated because the district court failed to conduct a full competency hearing, and (3) she had ineffective assistance of counsel because her counsel failed to request a full competency hearing pursuant to 18 U.S.C. § 4241; (B) counsel was ineffective for a variety of additional reasons (including failure to: subpoena certain witnesses, obtain discovery, file discovery motions, file pretrial motions, obtain all transcripts of testimony before the grand jury, and file an appeal); and (C) her due process rights were violated because the government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). I will address each of Langston's grounds for relief.

### A. Competency

Langston's first set of claims and the only claims asserted by her counsel involve her competency. Langston states in her *pro se* motion that during and preceding the trial she was "heavily abus[ing] drugs and alcohol." Langston Mot. at 10–11.

### 1. Substantive due process

 Langston asserts that her substantive due process rights were violated because she was incompetent to stand trial.[2] The conviction of a legally incompetent defendant violates due process. *See Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *see also United States v. Leggett*, 162 F.3d 237, 241 (3rd Cir.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999). A defendant is competent to stand trial if "(1) the defendant has the present ability to

consult with [defense counsel] with a reasonable degree of rational understanding and (2) the defendant has a rational as well as factual understanding of the proceedings." *Leggett*, 162 F.3d at 242 (internal quotations omitted).

 In general, "a person seeking to vacate his conviction bears the burden of proof upon each ground presented for relief." *Walden v. United States*, 418 F.Supp. 386, 388 (E.D.Pa.1976); *see also United States v. Abbott*, 975 F.Supp. 703, 705 (E.D.Pa.1997); *Cf. United States v. Hollis*, 569 F.2d 199, 205 (3rd Cir.1977) (explaining that "in habeas cases the general rule is that the petitioner himself bears the burden of proving that his conviction is illegal."). In cases raising mental incompetency, however, the burden of proof may be on the government. *See Hollis*, 569 F.2d at 207 (finding an exception to the general rule that the burden is on the petitioner because "of the inconsistency of expecting a defendant like Hollis who asserts that he is incompetent to demonstrate that he does suffer from mental incapacity, and since the issue was raised but was not litigated prior to conviction through no fault of the accused, it would not be appropriate for the burden of proof to be placed upon Hollis." But noting that "[t]he exception adduced here ... is designedly a limited one confined to the facts of this case."); *but see Martin v. United States*, 463 F.2d 220, 221 (3rd Cir.1972) (reasoning that "[t]he burden rested on the petitioner to establish by evidence his asserted mental incompetence at the time of trial and sentencing."); *United States v. Riddick*, 15 F.Supp.2d 673, 678 (E.D.Pa. 1998) (Van Antwerpen, J.) (explaining that while petitioner has a substantive due pro-

---

**2.** Arguably, because Langston failed to raise this argument either at trial or on direct appeal she is procedurally barred from raising this claim for the first time in her § 2255 motion. *See United States v. Frady*, 456 U.S. 152, 162–68, 102 S.Ct. 1584, 71 L.Ed.2d 816, *reh'g denied* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *United States v. Essig*, 10 F.3d 968, 979 (3rd Cir.1993). The government does not argue that Langston's claims are procedurally barred and the Court is not required to raise the issue of procedural default *sua sponte*. *Cf. Smith v. Horn*, 120 F.3d 400, 407–09 (3rd Cir.1997), *cert. denied*, 522 U.S. 1109, 118 S.Ct. 1037, 140 L.Ed.2d 103 (1998) (explaining that the issue of procedural default may be raised *sua sponte* by the court of appeals but exercised discretion not to raise the defense of procedural default *sua sponte* ).

cess right not to be tried and convicted while incompetent, "it is up to him to prove by the preponderance of the evidence that he was incompetent at the time of trial.") (citations omitted); *Kramm v. United States*, No. 95–CV–5280, 1996 WL 705962, at *3 (E.D.Pa. Dec.2, 1996) (Huyett, J.) (holding that a defendant raising actual incompetency in a § 2255 motion is entitled to an evidentiary hearing if he or she alleges facts that, if proved at the hearing, would entitle him or her to relief) (citation omitted). I need not resolve the issue of which party bears the burden of proof because even if the government has the burden, Langston's motion fails. The evidence conclusively shows Langston was competent to stand trial.

■ Langston has produced no evidence that she was incompetent at the time of the trial. Langston relies on the bald allegation that because she was abusing drugs and alcohol at the time of trial she was incompetent to stand trial. The government, on the other hand, has come forward with evidence that Langston was fully competent at the time of trial. Prior to trial, Judge Gawthrop ordered two psychiatric examinations of Langston pursuant to 18 U.S.C. § 4241(b).[3] One competency examination was held on September 25, 1997 and a second evaluation was conducted almost five months later on February 13, 1998. The psychiatric examinations were conducted by two separate psychiatrists and both confirmed that Langston was competent to stand trial. Additional-

ly, the second psychiatric evaluation was conducted just six days before trial commenced. On February 18, 1998, before Langston's trial began, the government's counsel stated on the record that she discussed this matter with Langston's counsel, Troiani, and Troiani "believes that Miss Langston is ready to proceed." Tr. Feb. 18, 1998 at 3. The government's counsel then confirmed on the record that Troiani "has been able to consult with [Langston] and [Langston is] ready to assist during the course of the trial." *Id.*

■ If a defendant's mere allegation that she was incompetent to stand trial were enough to warrant an evidentiary hearing, an evidentiary hearing would be required in every § 2255 case in which competency was raised.[4] Langston fails to point to any evidence in the record demonstrating that she was incompetent at the time of the trial. Therefore, I will deny Langston's claim that her substantive due process rights were violated without an evidentiary hearing.

## 2. Procedural due process

Next, Langston asserts that her procedural due process rights were violated because the district court failed to conduct a full competency hearing, commonly referred to as a *Pate* hearing.[5] *See Pate*, 383 U.S. at 385, 86 S.Ct. 836.

Langston fails to present enough evidence to warrant an evidentiary hearing regarding the court's failure to conduct a

3. Section 4241(b) states in relevant part that "[p]rior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court …". 18 U.S.C. § 4241(b).

4. A court must hold an evidentiary hearing prior to denying a § 2255 motion if the petitioner's allegations raise an issue of material fact. *See United States v. Essig*, 10 F.3d 968, 976 (3rd Cir.1993) (citing *Walker v. Johnston*, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L.Ed. 830 (1941); *United States v. Biberfeld*, 957 F.2d 98, 102 (3rd Cir.1992)). There is an issue of material fact when: (1) the petitioner's failure

to object was not a procedural waiver and (2) the error alleged is sufficiently serious to permit collateral review under § 2255. *See id.* at 976–77. An evidentiary hearing is not required on a motion under § 2255 if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

5. Langston's failure to present evidence that she was incompetent at the time of trial, necessarily indicates that the trial judge did not have reason to order a competency hearing. *See supra*, substantive due process section. I will, however, proceed in evaluating Langston's procedural due process claim.

*Pate* hearing. Section 4241(a) of Title 18 provides:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). In *Leggett,* the Third Circuit analyzed the application of 18 U.S.C. § 4241(a). The Third Circuit noted that "[i]f neither the defendant nor the government moves for such a [competency] hearing, the trial court may do so on its own motion ... To do so, however, the trial court must have 'reasonable cause' to believe that the defendant is 'presently' suffering from an impairment resulting in mental incompetency." *Leggett,* 162 F.3d at 241. The Third Circuit reasoned that "[t]here is no predetermined formula for making a finding of reasonable cause" necessitating a competency hearing. *Id.* at 242. The *Leggett* court explained that, "[a] court must simply look at the unique circumstances of the case and decide whether the defendant (1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of trial. If either prong is not met, a court has reasonable cause to order a competency hearing." *Id.*

*Leggett* was a direct appeal and therefore, did not address the petitioner's burden of proof on collateral attack.[6] As stated previously, in § 2255 cases, the burden is generally on the petitioner to prove her conviction was illegal. *Cf. Medina v. Sin-*

*gletary,* 59 F.3d 1095, 1106 (11th Cir.1995) (in a habeas corpus case the court held that "[t]o prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts raising a *bona fide* doubt regarding the petitioner's competency to stand trial ...") (internal quotations omitted); *James v. Gibson,* 211 F.3d 543, 551 (10th Cir.2000) (explaining in a habeas corpus case that "[i]n order to prevail on a procedural competency claim, a petitioner must establish a *bona fide* doubt as to his competency at the time of trial.") (internal quotations omitted). Even if the burden was on the government to prove that Judge Gawthrop did not have "reasonable cause" to believe that Langston was presently suffering from an impairment resulting in mental incompetency, the government would prevail.

■ As discussed above, two psychiatric evaluations confirmed that Langston was competent to stand trial and the government confirmed on the record that counsel agreed that Langston was competent to stand trial. Thus, the trial judge did not have cause to conduct a competency hearing and Langston's claim will be denied without an evidentiary hearing.

### 3. Ineffective assistance of counsel

Langston further contends that her trial counsel's failure to move for a competency hearing amounts to ineffective assistance of counsel. In *United States v. Dawson,* 857 F.2d 923 (3rd Cir.1988), the Third Circuit established criteria for determining whether a hearing should be held on a claim for ineffective assistance of counsel raised in a § 2255 motion. *See id.* at 927–28; *see also United States v. Simms,* Nos. Crim. 92–671–3, Civ.A. 97–2981, 2000 WL 190572, at * 6 (E.D.Pa. Feb.3, 2000). In *Dawson,* the Third Circuit reasoned that:

> First, we must determine whether the district court considered as true all ap-

---

6. Langston notes that at a competency hearing, "the burden of proof lies on the government by a preponderance of the evidence to establish the defendant's competency."

Langston Mem. at 4. Langston, however, fails to address the burden of proof for a collateral attack on the court's failure to hold a competency hearing.

pellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing.

857 F.2d at 927–28. The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), set forth the standard for a finding of ineffective assistance of counsel. The *Strickland* analysis consists of two separate parts, both of which must be satisfied in order to find ineffective assistance of counsel: (1) trial counsel's representation must fall below an objective standard of reasonableness; and (2) a reasonable probability must exist that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 687–88, 694, 104 S.Ct. 2052. In order to satisfy the second *Strickland* prong, the court must assess whether "there is a reasonable probability that … [the petitioner] would have been found incompetent to stand trial if not for the deficient performance of his [or her] attorney." *Hull v. Kyler,* 190 F.3d 88, 106 (3rd Cir.1999).

■ Langston's assertion that her attorney was ineffective for failing to request a competency hearing is not frivolous. Nevertheless, a reasonable probability does not exist that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Even if counsel had moved for a competency hearing a reasonable probability does not exist that Langston would have been found incompetent to stand trial. As discussed above, Langston had two psychiatric evaluations before her trial began and both psychiatric reports concluded that she was competent to stand trial. Therefore, I find that the

second prong of *Strickland* is dispositive here and on the record before me Langston's claim conclusively fails to show ineffective assistance of counsel.

**B. Additional ineffective assistance of counsel claims**

■ Langston's additional claims of ineffective assistance of counsel, raised in her *pro se* motion for a new trial, do not meet the threshold requirement of nonfrivolous factual claims. "It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255." *See Sepulveda v. United States,* 69 F.Supp.2d 633, 639–40 (D.N.J.1999) (citing *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Machibroda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3rd Cir.1991); *United States v. Dawson,* 857 F.2d 923, 928 (3rd Cir.1988)). For example, in *Dawson,* the Third Circuit held that "[t]he district court correctly declined to consider the unelaborated statement that [an alleged witness] saw [a witness against defendant] 'manufacture evidence.' Appellant has yet to indicate what the evidence was, much less how it was being 'manufactured.'" *Dawson,* 857 F.2d at 928. Therefore, Langston's failure to provide factual support for her allegations provides grounds to dismiss these claims.

Langston asserts that her trial counsel failed to: subpoena certain witnesses, obtain discovery, file discovery motions, file pretrial motions, obtain all transcripts of testimony before the grand jury, and file an appeal. Langston contends that had she been aware of her rights at the time of her trial she "would have insisted counsel subpoena Tamika Woods into court and others who would have substantiated" her defense. Langston Mot. at 14. Langston claims that Tamika Woods and others would have substantiated that:

 a) Tamika Woods was in the apartment when the bust went down

b) Tamika Woods had a person; [sic] (sexual) relationship with James Mackie

c) Tamika Woods and [Langston] look similar in appearance

d) Tamika Woods routinely "worked the door" because it was a known fact that Mackie did not trust Lanston [sic] or her drug habit with his money or "product" as he testified at Emma Mackie's trial.

*Id.* Langston also asserts that she "did not know that she had a reasonable right to discovery. Now, after trial, [Langston] realizes the she had not received any witness statements or police reports ...". *Id.* Langston states that "[c]ounsel did not inform [her] that she had the ability to subpoena witnesses (Tamika Woods) and abandoned defendant, filing a frivolous *Anders v. California* [brief] ...". *Id.* at 23.

The government's response to Langston's motion for a new trial states in part that:

Despite [Langston's] claims, police reports, investigative reports, arrest records and witness statements were produced in discovery. While Langston claims that she did not receive police and investigative reports, these reports, in fact, were relied upon by defense counsel during the cross-examination of witnesses. Defense counsel conducted substantial cross-examination relating to the criminal records of the cooperating defendants, James Mackie and James Mason. Prior statements, including testimony in the proceedings in *U.S. v. Emma Mackie,* Crim. No. 97–236–4, were also available to the defense.

Gov't Resp. at 2–3. The government attaches defense counsel's request for discovery in the form of a letter dated May 5, 1997 from Troiani to the Assistant United States Attorney. *See* Gov't Supplemental Resp. at 2, Ex. A. Additionally, the government attaches letters from the Assistant United States Attorney to Troiani indicating that various discovery was enclosed. *See id.* at Ex. B E. For example, a letter to Troiani from the Assistant United States Attorney, dated June 19, 1997, states in part that "[p]ursuant to Rule 16 of the Federal Rules of Criminal Procedure, the government is providing you with copies of the following documents and additional information [followed by a list of documents]." *Id.* at Ex. B. Additionally, the government provides copies of portions of the transcript from Langston's trial in which defense counsel made use of transcripts of the testimony in the separate trial of Langston's co-defendant, Emma Mackie. *See id.* at 2–3. The government also responds to Langston's assertion that her defense of mistaken identity was not presented to the jury. The government cites portions of the transcript where Troiani illicited testimony in support of Langston's defense that Tamika Wood's sold illicit drugs to the undercover agent not Langston. For example, one of Langston's daughters testified that Tamika Woods and her mother were like sisters and that they looked alike and styled their hair in a similar manner. *See id.* at 4. Moreover, defense counsel knew that Langston had met with the government in an off-the record proffer and that the proffer agreement had been signed. *See id.* Based upon the terms of the proffer, Langston's statements were admissible if representations were made during the trial that were inconsistent with her proffer. *See id.* at 5.

Aside from conclusory allegations, Langston provides no evidence that her trial counsel, Troiani, failed to subpoena certain witnesses, obtain discovery, file discovery motions, file pretrial motions, obtain transcripts of testimony before the grand jury, or file an appeal. As the government's statement above indicates, discovery was produced by the government for Langston's defense. Even affording the necessary deference to Langston's *pro se* submission, she still fails to set forth a claim of ineffective assistance of counsel. *See Royce v. Hahn,* 151 F.3d 116, 118 (3rd Cir.1998) (citing *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure

of tolerance")). For example, Langston's assertion that Troiani submitted an *Anders* brief improperly is patently incorrect. After filing a notice of appeal, Troiani submitted an *Anders* brief to the Third Circuit. *See Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (explaining that if counsel finds his client's appeal "to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."). The Third Circuit, in an unpublished decision, affirmed Langston's conviction and granted Troiani's *Anders* motion. *See United States v. Langston*, No. 98–1461 at 5 (3rd Cir. Dec.18, 1998). The Third Circuit reasoned that "[p]ursuant to *Anders*, we have conducted an independent examination of the record to determine whether it presents any issues that would justify further review. We agree with counsel that it does not. Accordingly, we shall grant counsel's motion and affirm the district court's judgment." *Langston*, No. 98–1461 at 5. Additionally, even if Troiani failed to subpoena certain witnesses, to obtain certain discovery or to file motions, Langston provided no evidence that but for Troiani's deficiencies the result of Langston's trial would have been different. Because Langston's claims conclusively fail to show ineffective assistance of counsel, I will deny her motion without an evidentiary hearing.

## C. *Brady* violation

Langston also claims that the government failed to turn over evidence to her in violation of *Brady v. Maryland*. The Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Recently, the Supreme Court explained that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Here, Langston asserts that she "did not have any discovery from which to build a proper defense because she received absolutely no discovery." Langston Mot. at 25. Langston claims that she was:

> interested in the police report filed by Officer Crystal Spann and the physical description noted of the person she bought cocaine from. [Langston] was also interested in the police reports filed by officers in charge of the warrant … and why officers … only arrested Langston, James Mackie, James Mason and Emma Mackie; when Tamika Woods and another unidentified adult female were allowed to go free.

*Id.* at 23–24. Additionally, Langston contends that "[a]t the very least, the *Brady* analysis applies because of material evidence that was exculpatory, was in the possession of government agents and agencies involved in the prosecution, was not disclosed and was in fact, buried." *Id.* at 26. In conclusion, Langston requests an evidentiary hearing.

The government responds that discovery was produced. The government notes that "police reports, investigative reports, arrest records and witness statements were produced in discovery …. [and] these reports … were relied upon by defense counsel during cross-examination of government witnesses. Defense counsel conducted substantial cross-examination relating to the criminal records of the cooperating defendants …". Gov't Resp. at 2–3. Langston provides no support for her assertion that the government failed to produce exculpatory evidence. Aside from the conclusory allegations above, Langston fails to demonstrate that the relevant evidence at issue was favorable to her, that evidence was suppressed by the government or that prejudice must have ensued. Therefore, I find that Langston has failed

428

to demonstrate that a *Brady* violation exists and I will dismiss this claim without an evidentiary hearing.

### IV. Conclusion

For all of the foregoing reasons, I will deny Langston's § 2255 motion. An appropriate order follows.

### *ORDER*

**AND NOW**, this 27th day of June, 2000, I **ORDER** that Beverly Langston's motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct her sentence, (docket entry # 146), filed as a motion for a new trial, (docket entry # 135) is **DENIED** and **DISMISSED** without an evidentiary hearing.

A certificate of appealability is denied for the reasons stated in the foregoing Memorandum. Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).