PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-2973

UNITED STATES OF AMERICA

v.

MICHAEL ARRINGTON,
                                    Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cr-00078-009)
District Judge: Honorable Yvette Kane

Argued on July 7, 2021

Before: AMBRO, JORDAN, and BIBAS, Circuit Judges

(Opinion filed: September 9, 2021)

Geoffrey Block (Argued)
Yale Law School
127 Wall Street
New Haven, CT 06511

Tadhg Dooley
David R. Roth
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, CT 06510

Counsel for Appellant[1]

Michael A. Consiglio (Argued)
Eric Pfisterer
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Michael Arrington was convicted of conspiring to distribute heroin, among other offenses. He filed a motion to

---

[1] We express our thanks to the Yale Law School Advanced Appellate Litigation Project and the supervising attorneys from Wiggin & Dana for taking on this matter *pro bono* and performing in an exemplary manner.

vacate his convictions under 28 U.S.C. § 2255 on the basis that his trial counsel was ineffective for waiving his right to testify without his consent. The District Court denied the motion. On appeal, Arrington argues the Court should at least have held a hearing before doing so. We agree that the District Court partially relied on an incorrect legal standard in denying Arrington's motion without a hearing. However, because he would not be entitled to a hearing even under the appropriate standard, we affirm.

## I. BACKGROUND

Arrington has a long criminal history, including multiple drug-trafficking convictions and parole violations from the 1990s and early 2000s. He does not dispute this history but claims he stopped engaging in drug activity after he was released from prison on parole in 2007. The Government, by contrast, contends Arrington quickly resumed his criminal activity after his release by becoming a drug supplier in Pennsylvania in 2008.

In February 2009, the police arrested some of Arrington's alleged co-conspirators. In the wake of this arrest, Arrington allegedly helped some of his other associates attempt to escape apprehension, including by allowing two of them to spend the night at his home before driving them out of state. From his release on parole in 2007 until this point, Arrington had appeared to be a "model parolee" and was working steadily at a car wash. Supp. App. at 256–58, 302. However, after his alleged associates were arrested, he abandoned his parole appointments and eventually fled the state altogether.

Police subsequently arrested Arrington after he unsuccessfully used an alias in an effort to evade authorities. He was charged with possession with the intent to distribute controlled substances, conspiracy to do the same, and traveling in interstate commerce with the intent to facilitate unlawful activity. He opted to go to trial, where attorney Laurence Kress represented him and several of his alleged co-conspirators testified against him. Among other statements, these witnesses represented that Arrington supplied wholesale quantities of drugs that they would divide and sell to customers. He contends there were inconsistencies and credibility issues in their testimony, including that one of the witnesses admitted to asking another witness to lie to police on one aspect of Arrington's trafficking activity. Kress repeatedly highlighted these issues for the jury during trial in an effort to cast doubt on the Government's case.

Although the District Court excluded evidence of Arrington's prior convictions, it allowed the Government, for the purpose of proving consciousness of guilt under Federal Rule of Evidence 404(b), to introduce evidence that he fled from parole. This evidence was discussed only a handful of times during trial. Arrington claims he told Kress that he wanted to testify to explain that he absconded from parole not because of his involvement in drug trafficking, but because he had accumulated a variety of minor, unrelated parole violations and decided to run rather than face the consequences. Kress did not honor this request, instead deciding that Arrington was not going to testify because doing so would open him to cross-examination, which might enable the Government to diminish his credibility by introducing evidence of his prior convictions. Kress, according to Arrington, never sought his consent to waive his right to testify or explained that the decision was his

4

to make. However, during his closing argument, Kress covered some of the material to which Arrington claims he would have testified, including explaining that people abscond from parole all the time for "different reasons that are personal to them." Supp. App. at 329. The Government addressed the issue only briefly during its rebuttal closing argument, suggesting that Arrington's flight from parole corroborated the other, and overwhelming, evidence of his guilt.

After deliberating for about three hours, the jury convicted Arrington. He appealed, and we affirmed. *See United States v. Arrington*, 530 F. App'x 143 (3d Cir. 2013). We held, among other things, that the District Court did not abuse its discretion in admitting the evidence of his flight from parole for the purpose of showing his guilty conscience. *Id.* at 146.

In 2014, Arrington filed a *pro se* motion to vacate his convictions under 28 U.S.C. § 2255, arguing, among other things, that Kress was ineffective for unilaterally waiving his right to testify. Alongside the motion, Arrington filed a declaration stating that, if he had been given the opportunity, he would have told the jury he was innocent and explained the real reasons he absconded from parole. The District Court denied this motion without a hearing. Although it presumed all of his allegations were true and non-frivolous, it decided Arrington was not entitled to relief because "the result of [his] trial would not have changed had [he] presented the testimony he now proposes." J.A. at 25. In the alternative, the District Court concluded Kress's performance was not deficient.

Arrington filed an unsuccessful motion for reconsideration, and then timely appealed to us. We granted a

5

certificate of appealability on the ineffective-assistance issue and appointed *pro bono* counsel to represent him.

## II. DISCUSSION

### A.      Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2255.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c).  On appeal, Arrington does not ask us to address the merits of his motion under § 2255.  He requests only that we decide whether the District Court erred in declining to hold a hearing on his motion.  We review that decision for abuse of discretion, *United States v. Scripps*, 961 F.3d 626, 631 (3d Cir. 2020), but exercise plenary review over the Court's underlying legal conclusions and review its factual findings for clear error, *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997).

### B.      Analysis

#### 1.      *The Standard for Obtaining an Evidentiary Hearing on a § 2255 Motion*

We begin by clarifying the standard a district court should use when determining whether a hearing is necessary on a § 2255 motion alleging ineffective assistance of counsel. Under that provision, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

This involves a two-pronged inquiry.  First, the district court must "consider[] as true all appellant's nonfrivolous

6

factual claims." *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988). Second, it must "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel." *Id.* at 927–28. In evaluating claims at the second step, the test is the familiar one set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a movant to show that his counsel's performance was deficient and prejudiced his client's defense. "If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *Dawson*, 857 F.2d at 928. "If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required." *Id.* To reiterate, "if a nonfrivolous claim does not *conclusively* fail either prong of the *Strickland* test, then a hearing must be held." *Id.* (emphasis in original). This is a "reasonably low threshold for habeas petitioners to meet." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (citation omitted). As we have observed in other contexts, "*colorable* legal merit is distinct from *actual* merit." *United States v. Begin*, 696 F.3d 405, 413 (3d Cir. 2012) (second emphasis in original).

The District Court erred in its articulation of the relevant standard for obtaining a hearing on a § 2255 *Strickland* motion. Although the Court partially described the correct standard at the outset of its opinion, it later stated it was rejecting Arrington's claim in part because "the Government's case against [him] was more than adequate to secure a conviction, even without evidence of [his] parole violation." J.A. at 26. But that describes the standard for evaluating a motion for a judgment of acquittal under Federal Rule of Criminal

7

Procedure 29, not the standard for obtaining an evidentiary hearing on a § 2255 *Strickland* motion. *See* Fed. R. Crim. P. 29(a) ("[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."); *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 599 (3d Cir. 2015) ("*Strickland* prejudice does not depend on the sufficiency of the evidence despite counsel's mistakes.").

On appeal, the Government seems to suggest that, to warrant an evidentiary hearing, a § 2255 movant must prove there is a "reasonable probability" that, absent counsel's errors, the trial would have had a "different result." Gov. Br. at 31. But "[t]hat misstates the appropriate standard," *McCoy*, 410 F.3d at 132, because it accelerates the timeline on which a movant must satisfy his burden under *Strickland*.

To prevail on a § 2255 *Strickland* motion, a movant must prove prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

But the standard for obtaining a hearing on a § 2255 motion is less onerous. As noted above, the statute "mandate[s] . . . an evidentiary hearing," *McCoy*, 410 F.3d at 134, unless the movant's *Strickland* claim fails as a "matter of law," *Dawson*, 857 F.2d at 929. *See also Scripps*, 961 F.3d at 635 (remanding for an evidentiary hearing because we could not conclude "as a matter of law" whether counsel was ineffective). A movant need not "prove" anything to warrant a hearing. He must simply allege a set of facts that is not

8

frivolous or clearly contradicted by the record and that demonstrates (if assumed to be true) that he would plausibly be entitled to relief under *Strickland*. *Dawson*, 857 F.2d at 927–28. A hearing is warranted where, for example, resolution of the motion turns on credibility or disputed facts, or the record is inconclusive about whether a movant is entitled to relief. *See United States v. Tolliver*, 800 F.3d 138, 142–43 (3d Cir. 2015) (remanding for a hearing because of factual disputes between the parties); *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) ("[T]he district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief."); *Dawson*, 857 F.2d at 930 ("Credibility is a question of fact to be decided by the finder of fact based on face-to-face observation.").

### 2. *Arrington's Claim*

We turn to Arrington's claim that the District Court abused its discretion in declining to grant him a hearing before denying his § 2255 motion. As noted, the Court partially relied on an incorrect legal standard in considering that claim. However, even under the standard articulated above, Arrington would not be entitled to a hearing, as his proposed testimony comes nowhere close to undermining confidence in the outcome of his trial. His *Strickland* claim thus fails as a matter of law.

First, the testimonial evidence against Arrington was overwhelming. At trial, there was consistent testimony that Arrington supplied drugs for his co-conspirators to cut and sell. To the extent there were discrepancies in the witnesses' accounts, they were minor. *See, e.g.*, Arrington Br. at 12–13

9

(noting that two witnesses provided differing accounts of whether one of them was present for one drug transaction). And while there was evidence that before trial one witness asked another to lie to the police about a detail—whether it was Arrington, or someone else, who had paid the witness to pick up drugs the day of her arrest—there was no evidence that the witness lied about any aspect of the case during her trial testimony. Most importantly, Kress raised all of these issues in open court during trial, but the jury still decided to convict Arrington.

Compared with the testimonial evidence, Arrington's flight from parole was a minute portion of the Government's case against him; it came up only a few, brief times during the three-day trial. In fact, the Government did not even bother to make any closing arguments about Arrington's parole absences until its rebuttal after Kress *sua sponte* raised the issue during his closing statement. Even then, the Government hardly touched on the issue, simply suggesting that Arrington's apparent consciousness of his own guilt, as demonstrated by his flight from parole, corroborated the profuse other evidence against him. It was perhaps unsurprising that the Government did not rely heavily on Arrington's flight from parole, as the record already contained another, much clearer, indicator that he had a guilty conscience: namely, his own admission, via stipulation, that he unsuccessfully used a false name to avoid arrest. Against this backdrop, we simply cannot fathom that Arrington's proposed testimony on the reason for his parole absences would have helped his case in any way.

Second, if Arrington had testified, it would almost certainly have been devastating for his defense. Cross-examination would have been "scorching," *United States v.*

10

*Wines*, 691 F.3d 599, 605 (5th Cir. 2012), enabling the Government to seek to introduce impeachment evidence of his prior convictions, parole violations, and drug activity. Moreover, his proposed testimony on the reason for his parole absences was internally inconsistent and could only have undermined his case. Specifically, although Arrington initially wrote in his declaration that he did not flee parole because he was afraid of being indicted for drug trafficking, he then contradicted himself by stating that one of the reasons he fled was that he was scared the Government would come looking for him after one of his alleged co-conspirators was arrested. Because Arrington's proposed testimony could not possibly have helped his case—indeed, we can conjure no way it would not have hurt him—we conclude his *Strickland* prejudice claim is not colorable.[2]  Thus the District Court was not required to hold an evidentiary hearing.

---

[2] The District Court held, in the alternative, that Arrington did not make adequate allegations under *Strickland*'s performance prong.  The Government does not defend this conclusion on appeal, and for good reason.  The declaration accompanying Arrington's § 2255 motion, presumed to be true, states a colorable claim that Kress's performance was deficient because he waived Arrington's right to testify without consent. *See United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995) ("The duty of providing . . . advice [on the right to testify] and of ensuring that any waiver is knowing and intelligent rests with defense counsel."); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) (en banc) (holding that defense counsel's performance is deficient under *Strickland* if he never informs the defendant that the ultimate decision of whether to testify belongs to the defendant).  The District Court purported to accept Arrington's allegations about Kress's performance as

11

\* \* \* \* \*

The bar for obtaining an evidentiary hearing on a § 2255 motion is low.  Even so, Arrington does not meet it, because his claim conclusively fails *Strickland*'s prejudice prong.  We therefore affirm.

---

true and nonfrivolous, but it discredited those allegations in the same breath by concluding that Kress had indeed secured Arrington's informed consent before waiving his right to testify. J.A. at 23–25.  The record did not clearly contradict the allegations about Kress's unilateral decision that Arrington not testify, and the Court went too far in concluding otherwise. However, this does not provide a basis for reversal, as Arrington's claim conclusively fails *Strickland*'s prejudice prong for the reasons discussed above.

12