**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____


No. 21-2817

_____


UNITED STATES OF AMERICA


v.


AMIN DE CASTRO,
                    Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-15-cr-00114-001)
District Judge:  Honorable Juan R. Sanchez

_____


Argued June 16, 2022
Before:  HARDIMAN, SMITH and FISHER, *Circuit Judges*.

(Filed: September 27, 2022)

Kenneth L. Mirsky   [**ARGUED**]
2033 Walnut Street
Philadelphia, PA 19103
        *Counsel for Appellant*


Jennifer Arbittier Williams, United States Attorney
Jessica Rice, Assistant United States Attorney   [**ARGUED**]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

**FISHER**, *Circuit Judge*.

Amin De Castro, a native and citizen of the Dominican Republic, appeals from the United States District Court for the Eastern District of Pennsylvania's order denying his petition for a writ of error coram nobis. De Castro seeks to vacate his conviction for being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). De Castro's conviction led to his deportation, and he now seeks to undo those collateral immigration consequences. He bases his petition on the recent Supreme Court decision *Rehaif v. United States*, 139 S. Ct. 2191 (2019), in which the Court held that under § 922(g), an illegal alien in possession of a firearm must be found to have had knowledge he was an illegal alien at the time of his arrest. We will affirm the District Court's denial of the coram nobis petition, but for the following reasons, we do so on different grounds.

## I.

### A.

De Castro came to the United States through Puerto Rico around 2002 or 2003 using a Dominican passport. In 2012, he married a U.S. citizen. On his behalf, his spouse submitted Immigration Form I-130, Petition for Alien Relative, in January 2014. The United States Citizenship and Immigration Services approved the petition and sent notice to De Castro's spouse in June of that same year. This notice stated that "[t]he approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa [or] for admission to the United States." App. 90. A month later, the Department of State National Visa Center notified De

Castro that his immigrant visa petition was eligible for further processing.

In September 2014, a Philadelphia police officer arrested De Castro for being an alien in possession of a weapon under 18 U.S.C. § 922(g)(5)(A). The officer approached De Castro after receiving a report that a Hispanic man was pointing a gun at children outside of a flower shop on the 1800 block of North 31st Street in Philadelphia. Upon arriving at the location, the officer noticed De Castro—who matched the description of the suspect—standing outside of an abandoned store front with his right hand in his front pants pocket. The officer asked De Castro to remove his hand from his pocket. When De Castro complied, his movement revealed the handle of a pistol in his pants pocket. The officer asked for identification and whether De Castro had a permit to carry a firearm. De Castro informed the officer that he was in the United States illegally and did not have a license to carry a firearm. The officer arrested De Castro.

## B.

The grand jury indicted De Castro on one count of possession of a firearm by an illegal alien under § 922(g)(5)(A). A jury found him guilty in September 2016. De Castro subsequently filed a motion for a new trial, asserting ineffective assistance of counsel. The District Court granted the motion. Rather than face a second jury, De Castro pleaded guilty in April 2017. The District Court accepted the plea and sentenced him to time served plus two years of supervised release.[1]

---

[1] De Castro appealed his judgment of conviction to this Court, which we affirmed. *United States v. De Castro*, 905 F.3d 676 (3d Cir. 2018).

4

Following his conviction, the Department of Homeland Security initiated removal proceedings against De Castro. However, De Castro was allowed to depart voluntarily to the Dominican Republic in 2017 after an immigration judge determined he qualified as a legal permanent resident. Thirteen months after the Supreme Court's decision in *Rehaif v. United States*, De Castro filed a petition for a writ of error coram nobis challenging his conviction. In *Rehaif*, notwithstanding decades worth of circuit caselaw to the contrary, the Supreme Court held that the "knowingly" provision of § 922(g) applies to both the possession *and* immigration status elements. 139 S. Ct. at 2200. Based on *Rehaif*, De Castro petitioned the District Court to issue a writ of error coram nobis vacating his conviction because the Government never proved he knew he was illegally or unlawfully in the United States, and the District Court never informed him at his plea colloquy that the Government was required to prove that element. The District Court denied his petition, and De Castro filed this timely appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 922(g)(5)(A) (alien in possession of firearm) and 18 U.S.C. § 3231 (offenses against the laws of the United States). We exercise jurisdiction under 28 U.S.C. § 1291 (final decision) and 18 U.S.C. § 3742 (sentence review). We review the District Court's legal conclusions de novo and its factual findings for clear error. *Ragbir v. United States*, 950 F.3d 54, 60 (3d Cir. 2020).

### III.

A writ of error coram nobis is an "extraordinary remedy" that may only be issued in the most limited of circumstances. *United States v. Denedo*, 556 U.S. 904, 911 (2009). A petitioner may seek a writ of error coram nobis to challenge his federal conviction when he is no longer in custody but still faces consequences from his conviction. *Ragbir*, 950 F.3d at 62. We recently synthesized decades of coram nobis law into a straightforward, five-part test. *See id.* We write today to emphasize the need for strict adherence to *Ragbir*'s five-part test and to announce the applicable standard for assessing its fundamental error element.

### A.

The background for our discussion is our decision in *Ragbir*. So we begin with a brief summary. Ravidath Ragbir was a green card holder from Trinidad and Tobago who was convicted of mortgage fraud with a loss of more than $10,000. *Id.* at 57–58. Given Ragbir's immigration status and the extent of his fraud, DHS sought to remove him to his native country. *Id.* at 58. Trying to avoid removal as a result of his conviction, Ragbir filed a petition for a writ of error coram nobis, which the United States District Court for the District of New Jersey denied. *Id.* at 57. We affirmed, holding that Ragbir did not meet the necessary conditions for relief. *Id.*

Because coram nobis petitions are few and far between, we took the opportunity in *Ragbir* to condense decades of coram nobis law from our Court and the Supreme Court. We explained that this rare remedy may be granted only if five prerequisites are met: "the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid convictions; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the

6

time of trial; and (5) asserted error(s) of a fundamental kind." *Id.* at 62. After providing more color to the law of the final three elements, we held that Ragbir did not have a sound reason for delay. *Id.* at 66. Because a petition must be denied if even one element is not satisfied, we affirmed the district court's denial.

B.

Here, the District Court denied De Castro's petition for a writ of error coram nobis, but it did not rely on the detailed framework we outlined in *Ragbir* to do so. Instead, it used this Court's logic from a recent habeas corpus decision regarding unpreserved *Rehaif* claims and applied it to the coram nobis context.

When seeking habeas relief, a prisoner may successfully bring a second or successive habeas petition only in the event of a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. 28 U.S.C. § 2255(h)(2). We held that such second or successive petitions based on the Supreme Court's decision in *Rehaif* must fail. *In re Sampson*, 954 F.3d 159, 161 (3d Cir. 2020) (per curiam). We explained that "*Rehaif* did not state a rule of constitutional law at all. Rather, it addressed what the *statutes* enacted by Congress require for a conviction under 18 U.S.C. § 922(g)." *Id.* Relying on our recognition that coram nobis relief is a rarity, the District Court concluded that if De Castro would be ineligible for relief under the standards for second or successive habeas petitions, he must also be ineligible for coram nobis relief. The District Court explained that, because the coram nobis standard "is more stringent than that applicable on direct appeal or in habeas corpus," a claim in a coram nobis petition that would be unsuccessful in a habeas

7

petition should likewise fail. App. 8 (quoting *Ragbir*, 950 F.3d at 62).

Although we understand the temptation to analogize to habeas law—as we previously have for coram nobis petitions—second and successive petitions are not sufficiently comparable. Thus, the District Court's habeas analysis was flawed and unnecessary. Second and successive habeas petitions are governed by statutory language not applicable to coram nobis petitions. *See* 28 U.S.C. § 2255(h)(2). And we hesitate to make any generalized rule that a coram nobis petition necessarily fails because a habeas petition would. Analogizing to habeas is also unnecessary here because *Ragbir* clearly sets forth the framework for analyzing a petition for coram nobis relief. To be sure, comparisons to habeas law may be helpful when considering unexplored areas of coram nobis law. But when dealing with coram nobis issues on which this Court has spoken, resorting to statutory habeas principles is unnecessary and improper.

## C.

Anticipating that its reliance on *Sampson* might be disfavored, the District Court also analyzed De Castro's petition based on the five prerequisites outlined in *Ragbir* and found they were met but the petition should still be denied. Although we agree the petition should be denied, we use alternative means to arrive at that conclusion. The Government concedes that De Castro satisfies the first two *Ragbir* requirements—the petitioner is no longer in custody and is suffering continuing consequences from the purportedly invalid conviction. We find nothing to persuade us otherwise, so we will not address them. The other three conditions, however, require further discussion.

8

### 1. Sound Reason for Delay

As we stated in *Ragbir* and other cases before it, a petitioner has no fixed deadline by which he must seek coram nobis relief. Coram nobis is a "remedy of last resort" that requires us to balance the often-conflicting interests of finality and equity. *Ragbir*, 950 F.3d at 63 (quoting *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam)). We do not require a petitioner to "challenge his conviction at the earliest opportunity," but do expect the petitioner to have "sound reasons for not doing so." *Id.* (quoting *United States v. Kwan*, 407 F.3d 1005, 1014 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010)). But a petitioner should not mistake the standard as easy to meet simply because it permits some flexibility. Indeed, the "'sound reason' standard is even stricter than that used to evaluate § 2255 petitions." *Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012) (quoting *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989)).

De Castro filed his petition thirteen months after the Supreme Court issued its decision in *Rehaif*. The District Court held that De Castro met the sound reason requirement, finding this delay reasonable because at the time of *Rehaif*'s issuance De Castro no longer lived in the United States, leaving him without "easy or ready access" to his attorney or other legal resources. App. 9 n.3. The District Court also noted the "unusual and extenuating circumstances" posed by the ongoing Covid-19 pandemic. *Id.* The Government argues that thirteen months is too long a delay as a matter of law. And even if it is not, De Castro's knowledge-of-immigration-status argument was available to him at his plea hearing, which occurred before

9

the Supreme Court's decision in *Rehaif*.[2] We address these arguments in turn.

The Government first argues that regardless of the reasons for De Castro's delay, thirteen months is too long a delay as a matter of law. Because habeas petitioners must file a petition within one year of the date on which the Supreme Court initially recognized the petitioner's asserted right, and the coram nobis standard is stricter than the one used to evaluate § 2255 petitions, the Government argues a coram nobis petitioner necessarily must file within one year too. The clock on De Castro's coram nobis petition would run from the Supreme Court's issuance of its *Rehaif* opinion. Because De Castro filed thirteen months after *Rehaif*, his petition would be time-barred. We decline to adopt a one-year time limit for coram nobis petitions. Putting aside that the habeas time limitation stems from a statutory requirement not governing coram nobis, this proposed rule plainly contradicts our precedent, which requires an individualized assessment of each coram nobis petition. *See Ragbir*, 950 F.3d at 63.

Our precedent does not mandate, or even suggest, that thirteen months is too long a delay. In *Ragbir*, this Court faulted the petitioner for taking six years to file a coram nobis petition. *Id.* at 64. The petitioner discovered the immigration consequences of his sentence stipulation in 2006, and his immigration attorney advised him to pursue overturning the conviction. *Id.* at 58. Still, the petitioner did not pursue a coram

---

[2] We construe the Government's argument that De Castro could have pursued his knowledge-of-immigration-status argument at his plea hearing as applicable to both the "sound reason for delay" and "availability of remedy at the time of trial" elements. *See infra* Section III.C.2.

nobis petition until 2012. *Id.* at 59. In the years between 2006 and 2012, the petitioner pursued administrative remedies, such as obtaining a visa and staying his removal. *Id.* at 58–59. We explained that the pursuit of administrative remedies did not negate his six-year delay in seeking coram nobis relief. *Id.* at 64. The petitioner could have launched a collateral challenge concurrently with his administrative challenge. *Id.* Similarly, the petitioner in *Mendoza* delayed filing for four years. 690 F.3d at 160.

De Castro's thirteen-month delay is significantly less than the six-year gap in *Ragbir* and the four-year gap in *Mendoza*. It is also less than the eighteen-month delay we held reasonable in *United States v. Cariola*, 323 F.2d 180, 183 (3d Cir. 1963). Accordingly, we are unwilling to say the District Court's factual findings about the difficulties De Castro faced while out of the country and without counsel during a novel global pandemic were clear error.

The Government next argues that De Castro's knowledge-of-immigration-status argument is five years too late. Specifically, the Government contends that whether § 922(g) requires proof that the defendant knew he was illegally in the country at the time of his arrest was an open question at the time of De Castro's plea hearing. Thus, the argument was available to him and any delay in making it was unreasonable. This Court has explained that ambiguity in the law does not justify a delay in seeking coram nobis relief. *Ragbir*, 950 F.3d at 65 (citing *Mendoza*, 690 F.3d at 160). "What matters is whether a claim can be reasonably raised." *Id.* The critical word is "reasonably." The Government argues that what is reasonable depends not on whether a claim would have succeeded, but whether a party had the *ability* to make certain claims. Surely, De Castro had such ability.

11

The procedural default rule from the habeas context teaches that a claim not raised on direct review may be raised on habeas only if the petitioner can demonstrate either "actual innocence" or "cause" and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations omitted). In the habeas context under *Bousley*, to demonstrate "cause," to avoid the effect of an earlier failure to raise a claim, a party can show that a claim "is so novel that its legal basis is not reasonably available to counsel." *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The Supreme Court also has explained that even an argument's "futility cannot constitute cause [for defaulting a claim] if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982) (quoting *Myers v. Washington*, 646 F.2d 355, 364 (9th Cir. 1981) (Poole, J., dissenting), *vacated sub nom. Washington v. Myers*, 456 U.S. 921 (1982)). Here, however, De Castro cannot show futility since the defendant in *Rehaif* argued the same point before De Castro pleaded guilty and Rehaif succeeded on that issue in the Supreme Court. The Court in *Reed* also said a claim should not be considered reasonably available where it challenges "a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *Reed*, 468 U.S. at 17 (citation omitted). Read together, *Reed* and *Engle* recognize the distinction between a live debate and a settled one.

If cause is shown where the argument would require the upending of unanimous lower court authority, we would struggle to find an example better than *Rehaif*, involving the Supreme Court upending a law that was settled by "a near-unanimous body of lower court authority." Before *Rehaif*, "every single Court of Appeals to address the question" had

12

held that § 922(g) did not require the government to prove the immigrant knew he was in the United States illegally at the time of his arrest. *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting); *see also United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991); *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012); *United States v. Langley*, 62 F.3d 602, 604–608 (4th Cir. 1995) (en banc); *United States v. Dancy*, 861 F.2d 77, 80–82 (5th Cir. 1988) (per curiam); *United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001); *United States v. Thomas*, 615 F.3d 895, 899 (8th Cir. 2010); *United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997); *United States v. Games-Perez*, 667 F.3d 1136, 1142 (10th Cir. 2012); *United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam); *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008). Ten of the courts of appeals had come to that conclusion, and all ten did so before 2017—the time of De Castro's plea hearing.

Ultimately, we find the Supreme Court's recent decision in *Greer v. United States*, 141 S. Ct. 2090 (2021), instructive as to whether De Castro lacked cause for his failure to preserve his *Rehaif* argument. Though *Greer* concerned *Rehaif* arguments presented on direct review and subject to plain error analysis, *id.* at 2099, the standard for coram nobis is even stricter. As the Court stated in *Greer*, "[a]ll that mattered was that [De Castro] failed to raise a contemporaneous [*Rehaif*] objection" during his trial and during his subsequent plea proceeding. *Id.*; *cf. United States v. Frady*, 456 U.S. 152, 166 (1982) (concluding that a "significantly higher hurdle" than the "'plain error' standard" applies to Section 2255 motions). Because the Court in *Greer* acknowledged that *Rehaif* undid a "uniform wall of precedent" from the courts of appeals, 141 S. Ct. at 2099, and that did not suffice to show cause, we hold that De Castro's reference to that same "wall of precedent" is no excuse for his failure to

13

preserve a *Rehaif* argument. And that conclusion obtains regardless, whether analyzed under the cause prong in the traditional post-conviction review context or under coram nobis's "sound reason" prong and the "no available remedy at the time of trial" prong, *Ragbir*, 950 F.3d at 63, discussed below.

Since *Rehaif*, the Eleventh Circuit has held that raising a knowledge-of-immigration-status argument was not "truly novel" so the defendant's failure to raise it at trial or on direct appeal meant he could not overcome the procedural default bar. *United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020) (quoting *United States v. Bane*, 948 F.3d 1290, 1296–97 (11th Cir. 2020)). Although neither of these Eleventh Circuit cases acknowledge *Reed*'s holding that a claim is novel when it challenges "a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved," 468 U.S. at 17 (citation omitted), we cannot ignore the import of the Supreme Court's recent decision *Greer* on our present analysis. Thus, we conclude De Castro did not have sound reason for delay.

Because a petitioner must satisfy each of *Ragbir*'s five prerequisites to obtain coram nobis relief, we could stop our analysis here. Nonetheless, we continue on to clarify this niche area of the law.

## 2. Availability of Remedy at the Time of Trial

The fourth element a petitioner must prove is that he had no available remedy at the time of his trial or, in De Castro's case, guilty plea. *Ragbir*, 950 F.3d at 63. This requirement "focuses on whether a party was unable to make certain arguments at trial or on direct appeal." *Id.* In *Ragbir*, we highlighted that "[i]n some circumstances, overlap may exist

14

between the coram nobis elements of 'sound reasons for delay' and 'no available remedy at the time of trial.'" *Id.* at 67 n.36. This is one of those circumstances.

Because we hold that De Castro's knowledge-of-immigration-status argument was not futile in 2017—the time of De Castro's plea deal—and he had no sound reason for delay in raising the issue—like others such as Rehaif—we also hold there was a remedy available to De Castro at that time. Thus, the District Court erred in holding otherwise.

### 3. Fundamental Error

We end our analysis with the fundamental error element. An error is fundamental if it would result in a "complete miscarriage of justice." *United States v. Woods*, 986 F.2d 669, 676, 678 & n.16 (3d Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). A fundamental error is one that usually cannot be remedied simply by a new trial. *Ragbir*, 950 F.3d at 63; *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011). "[T]he defects must completely undermine the jurisdiction of the court, rendering the trial itself invalid." *Ragbir*, 950 F.3d at 63. When other remedies are available, coram nobis relief is not appropriate. *Id.*

But what standard should we use to evaluate De Castro's fundamental error claim? He argues we should use a plain error standard. Courts typically invoke plain error review on direct appeal for claims not raised at trial. *E.g.*, *Frady*, 456 U.S. at 164; *Greer*, 141 S. Ct. at 2100. The District Court reviewed De Castro's fundamental error argument using this standard.

But De Castro did not raise his *Rehaif* argument on direct appeal. Rather, he has raised it for the first time as a collateral attack seeking a writ of error coram nobis. As a "general rule," we do not allow claims not raised at trial or on

15

direct appeal to be raised on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Plain error review is "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." *Frady*, 456 U.S. at 164. In the habeas context, we allow a party to overcome their "procedural default" if it can show either cause and prejudice or actual innocence, *Bousley*, 523 U.S. at 622, not because it is statutorily or constitutionally mandated but because it "conserve[s] judicial resources and . . . respect[s] the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. The Government urges us to adopt the same rule in the coram nobis context. Consistent with our earlier statements that "the standard for obtaining coram nobis is more stringent than that applicable . . . in habeas corpus," *Ragbir*, 950 F.3d at 62 (original alterations omitted), we oblige.

De Castro cannot meet this standard's heavy burden of showing both cause and prejudice. He argues that he could not have known at the time of his trial that the Government needed to prove he knew he was unlawfully in the country. As discussed in Section III.C.1 and III.C.2, De Castro has not shown cause for failing to raise the *Rehaif* issue. Cause does not exist just because an argument seemed futile to the petitioner at the time of trial or guilty plea.

De Castro also fails at the prejudice step. To show prejudice, he must establish that the Government's failure to prove an essential element of the claim "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *Frady*, 456 U.S. at 170). De Castro's presentence report states that during his arrest he

16

admitted he was in the country illegally. But the presentence report also contains an express disclaimer that De Castro does not stipulate to the facts as summarized in the report. And De Castro argues that he stated he did not have a U.S. passport and was not a citizen, but never admitted he knew he was in the country illegally. He argues that the police's arrest memo confirms this.

The statements he points to in the arrest memo do not negate the statements in the presentence report. De Castro argues that we should ignore the presentence report because he had no reason to challenge it at the time of creation because his conviction did not depend on his knowledge of his immigration status. We disagree. A defendant has a strong interest in ensuring all aspects of his presentence report are accurate because "the court . . . may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). With this statement from the presentence report, taken as fact because De Castro did not dispute the report, De Castro cannot show that the Government's failure to prove the knowledge-of-immigration-status element actually and substantially disadvantaged him because a jury still would have had enough evidence to convict. Thus, De Castro cannot show actual prejudice.

Failing to meet the cause and prejudice standard, De Castro's only option is to make a threshold showing of "actual innocence." *Bousley*, 523 U.S. at 622–23. De Castro again falls short. "Actual innocence" requires a petitioner to show that it was "more likely than not that no reasonable juror would have convicted him" had the district court correctly advised him at the plea hearing and given the government the opportunity to adduce evidence of the omitted element. *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995). But "'actual innocence' means factual innocence"; therefore, "the Government is not limited

17

to the existing record to rebut any showing that petitioner might make." *Bousley*, 523 U.S. at 623–24. This includes "evidence [that] was not presented during the petitioner's plea colloquy and would not normally have been offered before [the Court's] decision in" *Rehaif* reinterpreting § 922(g). *Id.*

The Government points to statements in De Castro's presentence report to support that he knew he was in the country illegally, but has additional support in testimony from the arresting officer about statements De Castro made when he was arrested and De Castro's sworn statements to an immigration enforcement agent regarding the circumstances of his illegal entry. Critically, De Castro offers no reasonable rebuttal to the Government's position. Instead, he argues that despite knowing that he entered the country illegally in 2002 or 2003, he "legitimately believed he was not unlawfully in the country but was allowed to remain in the United States while a determination was made of his immigration status" because of the notice he received after submitting Form I-130. Appellant Br. 18. This argument strains credulity. The I-130 form specifically states that "[t]he approval of this visa petition does not in itself grant any immigration status," and "THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA." App. 90. The notice also stated that De Castro's immigration visa petition was merely eligible "for further processing" and other "steps in the immigration process" still must take place. *Id.* at 92. Considering all of this, De Castro cannot establish actual innocence under the *Rehaif* standard because he cannot demonstrate it is more likely than not that no reasonable juror would conclude that he knew of his status as an illegal alien at the time he possessed a firearm. Because he has no legitimate claim of actual innocence, he cannot prove fundamental error.

18

## IV.

To grant a petition for a writ of error coram nobis, a District Court must find a petitioner has established all five *Ragbir* prerequisites. De Castro falls short on more than one. For these reasons, we will affirm the District Court's order denying the writ of error coram nobis.