**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-3184

———————

UNITED STATES OF AMERICA

v.

MOHAMMED JABATEH,
a/k/a JUNGLE JABBAH,
Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:16-cr-00088-001)
District Judge:  Honorable Paul S. Diamond

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 4, 2025

———————

Before:  KRAUSE, PHIPPS, and ROTH, *Circuit Judges*

(Filed: March 25, 2026)

———————

OPINION*

———————


PHIPPS, *Circuit Judge*.

An asylee was convicted of perjury and immigration fraud for oral statements that

he made in connection with his application for lawful permanent residency.  On direct

appeal, this Court held that the immigration fraud statute does not apply to oral statements

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

but nonetheless upheld the immigration fraud convictions because the challenge to those convictions had not been preserved and the error was not plain. The asylee collaterally challenged the immigration fraud convictions through a § 2255 motion, arguing that the convictions violated due process and claiming ineffective assistance of trial counsel. The District Court denied his motion, which he now appeals. On *de novo* review, we will affirm the denial of that motion.

### BACKGROUND

Mohammed Jabateh, a former Liberian Civil War militia commander who engaged in "brazen violence and wanton atrocities," fled to the United States and successfully applied for asylum. *United States v. Jabateh*, 974 F.3d 281, 286 (3d Cir. 2020). In his written application for asylum submitted in 1998, Jabateh falsely indicated that he was a non-combat, non-leadership participant in the conflict who feared that he would face persecution by the victorious factions. *See id.* at 289.

In 2001, Jabateh applied for lawful permanent residency, or colloquially a 'green card,' and in his application, he made similar false written statements. *See id.* at 290. When he was interviewed on March 11, 2011, in connection with his permanent residency application, Jabateh orally affirmed those false statements. *See id.*

Almost precisely five years later, on March 10, 2016, a federal grand jury in Philadelphia indicted Jabateh on two counts of immigration fraud, *see* 18 U.S.C. § 1546(a), and two counts of perjury, *see* 18 U.S.C. § 1621(1), all based on his false interview statements. Those crimes were subject to a five-year statute of limitations, *see id.* § 3282(a), and Jabateh was not charged for his prior written statements in his applications for asylum and permanent residency.

As far as the immigration fraud charges, the statute itself contains the phrase 'under oath,'[1] which can refer to oral sworn statements, *see, e.g.*, U.S. Const. art. VI, § 1, cl. 3 (requiring officials to take an Oath of Office); *Under Oath*, *Merriam-Webster's New World College Dictionary* (3d ed. 1994) (defining 'under oath' as "bound or obligated by having made a formal oath, as in a court of law"); *but cf.* Fed. R. Civ. P. 33(b)(3) (using the phrase 'under oath' in the context of written interrogatory responses). And at no point in the proceedings did Jabateh's trial attorney argue that the immigration fraud statute did not apply to oral statements. *See Jabateh*, 974 F.3d at 298.

After going to trial, a jury convicted Jabateh on both counts of immigration fraud and both counts of perjury. The District Court then imposed 120-month sentences for each fraud count and 60-month sentences for each perjury count – all to run consecutively for a total of a 360-month prison term.

Through a different attorney, Jabateh challenged his convictions and sentence on appeal. His appellate counsel had no success in contesting the perjury convictions or the sentence, but he did convince this Court that the immigration fraud statute applied only to false written statements – not false oral statements. *Id.* at 297, 300, 303. Even so, because Jabateh's trial counsel had not preserved that argument, it was subject to plain-error review, and this Court upheld the convictions for immigration fraud because the error was not plain on account of "the novelty of the interpretative question" as well as "the lack of persuasive, let alone authoritative, guidance." *Id.* at 287.

---

[1] *See* 18 U.S.C. § 1546(a) (subjecting to criminal penalty any person who "knowingly makes *under oath*, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact" (emphasis added)).

After that decision, in September 2022, Jabateh sought post-conviction relief through a § 2255 motion. *See* 28 U.S.C. § 2255. The foundation for Jabateh's motion was the one point on which he succeeded in his prior appeal, *viz.*, that the immigration fraud statute applies only to written statements, not oral statements. Using that basis, he asserted that under due process principles, he could not be convicted for oral statements under the immigration fraud statute. Jabateh also contended that his trial counsel was ineffective for failing to preserve a challenge to the application of the immigration fraud statute to Jabateh's oral statements at his green card interview. The District Court denied that motion. *United States v. Jabateh*, 2024 WL 4535453, at *3–5 (E.D. Pa. Oct. 21, 2024).

Through a timely notice of appeal, Jabateh invoked this Court's appellate jurisdiction to challenge that ruling, and he now renews his arguments. *See* 28 U.S.C. § 2253(a), (c); *id.* § 1291.

**DISCUSSION**

*1. The Due Process Challenge*

There is some allure to Jabateh's due process challenge. The Supreme Court has explained that a "conviction and continued incarceration . . . violate due process" when the conduct being punished is not prohibited by a "criminal statute, as properly interpreted." *Fiore v. White*, 531 U.S. 225, 228 (2001); *see* Wayne R. LaFave, 1 *Substantive Criminal Law* § 1.2(b) (3d ed. 2025) (summarizing a "basic premise of the criminal law" that "conduct is not criminal unless forbidden by law"); *Davis v. United States*, 417 U.S. 333, 346–47 (1974) (explaining that where "punishment [is] for an act that the law does not make criminal[,] . . . such a circumstance inherently results in a complete miscarriage of justice" justifying "collateral relief under [§] 2255" (quotation omitted)). Consistent with that principle, § 2255 prohibits sentences that are not authorized by law. 28 U.S.C.

4

§ 2255(b) ("If the court finds . . . that the sentence imposed was not authorized by law . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.").

Nonetheless, the procedural posture for this challenge matters, and this Court has repeatedly held that § 2255 does not permit relitigation of issues presented and decided on direct appeal. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (Alito, J.); *United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979); *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."); *see also Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring in the judgment) ("[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."). And here Jabateh attempts not only to reassess the consequences of an issue presented and decided in his direct appeal (the construction of the immigration fraud statute), but also to do so without giving any effect to the remainder of the analysis on direct appeal (that the error was not plain). *Cf. Jabateh*, 974 F.3d at 298–300. This is a scenario within the scope of the relitigation bar.

There are several exceptions to the relitigation bar, including one for a change in applicable law. *See Palumbo*, 608 F.2d at 533. But this Court has not applied that exception when the change in applicable law occurs in response to the § 2255 movant's direct appeal. Without the applicability of that exception or any other,[2] the relitigation bar

---

[2] The other exceptions concern "circumstances indicating that an accused did not receive full and fair consideration," including "newly discovered evidence that could not reasonably have been presented at the original trial" and "incompetent prior representation by counsel," but those circumstances are not present here. *Palumbo*, 608 F.2d at 533. *But cf. Edwards v. Vannoy*, 593 U.S. 255, 276 (2021) (holding that "new procedural rules do not apply retroactively on federal collateral review").

forecloses Jabateh's ability to use the favorable component of his direct appeal as a basis for collateral relief.[3]

## 2. The Claim of Ineffective Assistance of Trial Counsel

As a variation on a theme, Jabateh argues that his trial counsel was ineffective by not challenging the application of the immigration fraud statute to oral statements. *See generally Travillion*, 759 F.3d at 288 ("[I]ssues resolved in a prior direct appeal . . . may, however, be used to support a claim for ineffectiveness."). A necessary component of a claim for ineffective assistance of counsel is a showing that "counsel's performance was deficient," in that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In interpreting that performance prong, this Court has made clear that there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Nguyen v. Att'y Gen. of N.J.*, 832 F.3d 455, 464 (3d Cir. 2016) (quoting *Travillion*, 759 F.3d at 289). In line with those principles, the success of appellate counsel on an argument that was not preserved by trial counsel does not necessarily mean that trial counsel was ineffective – especially when the challenge involves a novel legal question.

Applied here, the performance of Jabateh's trial counsel was not deficient. The immigration fraud statute uses the phrase 'under oath,' and that provides a textual basis for its potential application to oral sworn statements, such as those made by Jabateh.[4]

---

[3] In opposing the application of the relitigation bar, Jabateh argues that it should be subject to the cause and prejudice exceptions for procedural defaults. That is incorrect. Unlike procedural default, which occurs in the § 2255 context when a claim was not raised at trial or on direct review, the relitigation bar applies when an issue has been raised and decided in a prior direct appeal. *Compare Massaro v. United States*, 538 U.S. 500, 504 (2003), *and United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022), *with Travillion*, 759 F.3d at 288.

[4] *See* U.S. Const. art. VI, § 1, cl. 3; *Under Oath*, *Merriam-Webster's New World College Dictionary* (3d ed. 1994).

6

Although this Court's groundbreaking holding confined the statute's application to written statements, that "new issue of interpretation" was not clear or obvious, and it required supplemental briefing and "a close interpretative inquiry" to resolve. *Jabateh*, 974 F.3d at 297 n.19, 299–300. So, failing to raise such a challenge at trial did not fall below objective standards of reasonableness. Accordingly, without a showing of deficient performance, Jabateh cannot succeed in his claim that his trial attorney provided ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.