# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2740

UNITED STATES OF AMERICA

v.

AARON LYONS,
Appellant

_____

On Appeal from the U.S. District Court, W.D. Pa.
Judge David S. Cercone, No. 2:17-cr-00053-001

Before: SHWARTZ, BIBAS, and PHIPPS, *Circuit Judges*
Argued: Mar. 2, 2026; Filed: Apr. 28, 2026
_____

OPINION OF THE COURT

BIBAS, *Circuit Judge*. Our legal system tempers fairness with finality. So habeas petitioners may not raise new arguments based on new precedents if the bases of those arguments were "reasonably available" earlier on. Otherwise, Monday-morning quarterbacking would flood post-conviction courts with new claims, gutting finality. Yet that is what Aaron Lyons asks us to allow.

Lyons pleaded guilty to possessing an offensive weapon. The judge warned him that the crime was punishable by five years in prison and that the conviction meant he could not have a gun again; he said he understood. Then he possessed a gun

again and pleaded guilty to possessing a gun despite his conviction. At the time, no court required the government to prove that the defendant knew of his qualifying conviction. Yet more than a year later, the Supreme Court held that prosecutors must prove that the defendant had such knowledge when he possessed the gun. Based on that new ruling, Lyons collaterally attacks his conviction. But he could have made his argument when he pleaded guilty in federal court to possessing a gun as a convicted felon. Because Lyons defaulted the argument, and because the record forecloses his claim of actual innocence, we will AFFIRM the District Court's dismissal.

## I.   LYONS POSSESSES A GUN DESPITE HIS CRIMINAL RECORD

Late one afternoon in 2012, Lyons and his friends were hanging out at an elementary-school playground in Pittsburgh. He was eighteen. Police caught him there with a gun. He pleaded guilty to possessing an offensive weapon and was sentenced to one year of probation. 18 Pa. Cons. Stat. §908(a).

Unfortunately, that was not Lyons's last run-in with the law. A few months after he finished probation, police found him leaning against a car in Pittsburgh. The officers asked him to come talk with them. Before Lyons approached them, he dropped something on the ground—a loaded pistol. He was indicted for, and pleaded guilty to, violating the federal felon-in-possession law. It forbids a person from knowingly possessing a gun after being convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. §§922(g)(1), 924(a)(8) (requiring knowledge). Despite the law's nickname, it sweeps in many crimes that state law calls misdemeanors. *See* 18 U.S.C. §921(a)(20)(B).

When Lyons was charged in 2017 with violating §922(g)(1), there was a consensus among the federal courts of appeals. All ten circuits to address the issue (including ours) had held that the crime had only three elements: (1) the defendant had to have been convicted of a crime punishable by more than one year; (2) the defendant had to know that he was possessing a gun; and (3) the gun possession had to touch interstate or foreign commerce. *See Rehaif v. United States*, 588 U.S. 225, 256 n.6 (2019) (Alito, J., dissenting) (collecting cases); *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012). So at the plea colloquy, the district court went over those three elements with Lyons and told him that the government would have to prove all three beyond a reasonable doubt at trial. Lyons pleaded guilty and was sentenced. Though he filed an appeal raising a Second Amendment issue, he voluntarily dismissed the appeal.

Shortly afterwards, the Supreme Court abrogated the circuits' consensus. In *Rehaif v. United States*, it held that, to violate §922(g)(1), a defendant needed to know not only that he was possessing a gun, but also his status (as a person convicted of a crime punishable by more than one year). *See* 588 U.S. at 237. We later held that *Rehaif* applies retroactively on collateral review. *United States v. Hill*, 98 F.4th 473, 482–83 (3d Cir. 2024).

Armed with *Rehaif*, Lyons collaterally attacked his felon-in-possession conviction. He filed a motion under 28 U.S.C. §2255, claiming that his plea was unknowing and involuntary because the district court had not told him all the crime's elements—namely, that he had to know his conviction status. There was just one problem: Lyons had not made the *Rehaif*

3

argument before the trial court or on direct appeal, because *Rehaif* had not yet been decided. That meant he had procedurally defaulted the claim. He tried to get around the default in two ways, arguing that (1) the *Rehaif* claim was so novel that it was not reasonably available to him when he pleaded guilty, and (2) that he was actually innocent of the crime because he had not known his conviction status then.

The District Court rejected both arguments without an evidentiary hearing. Lyons now appeals. Even though he has completed his prison term and supervised release, we still have jurisdiction because he "challenges his underlying *conviction*," so we "presume[ ] the existence of collateral consequences." *United States v. Juv. Male*, 564 U.S. 932, 936 (2011) (per curiam). We review the District Court's legal ruling on procedural default de novo and its denial of an evidentiary hearing for abuse of discretion. *Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009) (de novo); *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (abuse of discretion).

## II. LYONS LACKS CAUSE FOR DEFAULTING HIS *REHAIF* CLAIM

One way a habeas petitioner (or § 2255 movant) can get around a procedural default is to show cause for the default, plus prejudice that results from it. "Cause" must be "something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Lyons argues that his cause is the novelty of his *Rehaif* claim. But novelty almost never suffices, and this case is no exception.

4

### A. A legal claim's novelty almost never excuses the failure to raise it earlier

Ordinarily, a lawyer's oversight is not cause for failing to raise an issue; the defendant must "bear the risk of attorney error." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But there are exceptions. One is when trial counsel falls below the Sixth Amendment's guarantee of effective assistance of counsel. *Id.* There, "the Sixth Amendment … requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (alteration in original)). But the ineffective-assistance standard is demanding: The defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

There is another exception for a claim "so novel that its legal basis is not reasonably available to counsel" at the time of the default. *Reed v. Ross*, 468 U.S. 1, 16 (1984). That exception exists because "[i]f counsel has no reasonable basis upon which to formulate a … question, … it is safe to assume that he is sufficiently unaware of the question's latent existence that [a court] cannot attribute to him strategic motives of any sort." *Id.* at 14–15. For example, after the Supreme Court reversed course and rejected a criminal procedure that it had previously approved, it held that its reversal amounted to cause and excused defense counsel's failure to raise the novel claim earlier. *Id.* at 17–18.

Yet the novelty exception is tiny. Rarely are claims novel enough to create cause for default. "Where the basis of a … claim is available, and other defense counsel have perceived

and litigated that claim, the demands of … finality counsel against" treating a lawyer's ignorance of an objection as cause for a procedural default. *Engle v. Isaac*, 456 U.S. 107, 134 (1982). For instance, Kenneth Bousley had pleaded guilty to "using" a gun simply by possessing it, a reading of the relevant law that his circuit had adopted. 18 U.S.C. §924(c)(1); *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). But after Bousley's conviction became final, the Supreme Court held that the "using" element required "active[ly] employ[ing]" the gun, not just possessing it. *See Bailey v. United States*, 516 U.S. 137, 150 (1995). So Bousley collaterally attacked his conviction under §2255, arguing that he had cause for not raising the claim earlier because the *Bailey* ruling was novel. *Bousley*, 523 U.S. at 617, 622. The Supreme Court disagreed, holding that Bousley's claim was not novel because, when he had pleaded guilty, "the Federal Reporters were replete with cases involving [*Bailey*-type] challenges." *Id.* at 622. It did not matter that many of these claims had failed; it was enough that the logical building blocks were available to any lawyer who had thought to look.

*Bousley* clarified *Engle*'s suggestion: Truly novel claims are vanishingly rare. A claim might qualify if no existing case supports it or it "has been decisively foreclosed by Supreme Court precedent at the time of default." *United States v. Pollard*, 20 F.4th 1252, 1262 (9th Cir. 2021) (R. Nelson, J., concurring). Short of that, novelty is not enough cause to excuse a default.

Lyons cannot satisfy *Bousley*'s demanding standard. When he defaulted his *Rehaif* claim in 2017, "the Federal Reporters were replete with cases involving challenges" to whether §§922(g)(1) and 924(a)(8) required a defendant to know his

conviction status. *Bousley*, 523 U.S. at 622. True, those cases had unanimously rejected the argument that *Rehaif* eventually embraced. But multiple circuits had highlighted the argument's potential merit, including then-Judge Gorsuch in a concurrence. *See United States v. Ford*, 821 F.3d 63, 71 (1st Cir. 2016) ("a good argument"); *United States v. Games-Perez*, 667 F.3d 1136, 1145 (10th Cir. 2012) (Gorsuch, J., concurring) ("In fact, this result isn't just plausible, it is presumptive."); *United States v. Reyes*, 194 F. App'x 69, 70 (2d Cir. 2006) (summary order) ("some persuasive force"); *United States v. Langley*, 62 F.3d 602, 613–19 (4th Cir. 1995) (Phillips, J., concurring in part and dissenting in part).

In short, the "basis of [Lyons's *Rehaif*] claim [was] available, and other defense counsel ha[d] perceived and litigated that claim." *Engle*, 456 U.S. at 134. Lyons's claim was not novel: He could have raised it, as its conceptual building blocks were there for all to see. Thus, he lacked cause for his default.

## B. Cases from two related contexts confirm that *Bousley*'s approach applies here

Two recent cases involving *Rehaif* bolster our conclusion. One case turned on the plain-error doctrine. A defendant had failed to raise a *Rehaif* claim at trial (before *Rehaif* had been decided) but wanted to excuse that forfeiture on direct appeal (after *Rehaif* came down). *Greer v. United States*, 593 U.S. 503, 511 (2021). He argued that, "[g]iven th[e] uniform wall of [circuit] precedent" against him, raising the claim earlier would have been futile. *Id.* Yet the Supreme Court rejected any futility exception to plain-error review, in part by recognizing that the defendant had had an "*opportunity*" to raise the claim even

7

though he was not "likel[y] [to] *prevail*[ ] on" it. *Id.* at 512. Indeed, Rehaif himself had done so and eventually succeeded. Similarly, the cause inquiry for Lyons must focus on whether his claim's basis was "available," not whether litigating it "would have been futile" at the time. *Engle*, 456 U.S. at 134 (first quotation); *Bousley*, 523 U.S. at 623 (second one). Plus, the standard to revive a defaulted claim on collateral review presents "a significantly higher hurdle than [the plain-error standard applicable] on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). If futility is no excuse on direct appeal under *Greer*, it cannot be one on collateral review either.

The other case is about the writ of error coram nobis, for a convict who "is no longer in custody but still faces consequences from his conviction." *United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022). To get the writ, a convict must "provide[ ] sound reasons for failing to seek relief earlier." *Id.* Yet he has no sound reasons if his "argument was available to him" earlier on. *Id.* at 844. In *De Castro*, we rejected the petitioner's *Rehaif* claim because he had failed to raise it earlier. We explained that "even an argument's futility cannot constitute cause for defaulting a claim if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 845 (cleaned up) (quoting *Engle*, 456 U.S. at 130 n.35). And though raising a *Rehaif* claim before the Supreme Court's decision would have "require[d] the upending of unanimous lower court authority," that was not enough to excuse the default. *Id.* In so holding, *De Castro* applied *Bousley* and *Greer*'s logic, analogizing coram nobis to habeas and stressing that coram nobis's standard (like habeas's) is "even stricter" than *Greer*'s plain-error review on direct appeal. *Id.* at 845–46.

8

**C. *Reed*'s second category was dictum and does not survive *Bousley***

Seeking to get around *Bousley*, Lyons asks us to instead apply the Supreme Court's earlier discussion of novelty in *Reed*. By way of background, the Court had long left states free to put the burden of proving various affirmative defenses on murder defendants. *Reed*, 468 U.S. at 18. And for more than a century, North Carolina had required murder defendants to *dis*prove malice, an element of murder. *Id.* The convict in *Reed* had not challenged that requirement at trial or on direct appeal. *Id.* at 7. But in 1975, the Supreme Court struck down this practice, requiring prosecutors to bear the burden of proving every essential element of a crime beyond a reasonable doubt. *Id.* at 3–4 (discussing *Mullaney v. Wilbur*, 421 U.S. 684 (1975)). Only after *Mullaney* did the convict raise the claim on collateral review. The Court held that his "constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel" because the Court's previous cases had "arguably sanctioned" letting a state use "an affirmative defense to shift to the defendant the burden of disproving an essential element of a crime." *Id.* at 16, 18.

In so holding, the Court outlined three categories of cases that could be novel enough: (1) when the Court had "explicitly overrule[d] one of [its] precedents"; (2) when a new decision had "overtur[ned] a longstanding and widespread practice to which th[e] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved"; and (3) when a new decision had "disapprov[ed] a practice th[e] Court arguably ha[d] sanctioned in prior cases." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982),

9

*overruled in part by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987)).

Lyons relies on *Reed*'s second category. Yet that one was dictum; as *Reed* itself noted, "[t]his case is covered by the third category." 468 U.S. at 18. Plus, the dictum is inconsistent with the Court's later discussion of novelty in *Bousley*: If a "near-unanimous body of lower court authority has expressly approved" a practice that the Supreme Court later rejects, the Federal Reporters are, by definition, "replete with cases involving" challenges to the practice. *Reed*, 486 U.S. at 17 (first quotation); *Bousley*, 523 U.S. at 622 (second one). That makes *Reed*'s treatment of novelty questionable at best. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013) ("[W]e are not necessarily bound by dicta should more complete argument demonstrate that the dicta [are] incorrect."). We will not extend the case beyond its facts.

Most of our sister circuits agree. Two have recognized that *Reed*'s second category is a dead letter. *United States v. Vargas-Soto*, 35 F.4th 979, 997 (5th Cir. 2022); *Gatewood v. United States*, 979 F.3d 391, 395–96 (6th Cir. 2020). Four others have doubted *Reed*'s continuing vitality. *See Daniels v. United States*, 254 F.3d 1180, 1191 (10th Cir. 2001) (en banc); *Simpson v. Matesanz*, 175 F.3d 200, 212 (1st Cir. 1999); *Boyer v. United States*, 55 F.3d 296, 299 (7th Cir. 1995); *United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001). The only circuit to go the other way thought that *Reed*'s second category remains binding precedent and "co-exist[s] comfortably" with *Bousley*. *United States v. Werle*, 35 F.4th 1195, 1200–01 (9th Cir. 2022). Yet dicta are never binding. And *Bousley* conflicts with the futility reasoning underlying *Reed*'s second category.

Finally, Lyons protests that one of our precedents requires applying *Reed*'s second category, but that precedent is inapt. *United States v. Roberson*, 194 F.3d 408 (3d Cir. 1999) (Alito, J.). In that case, Kevin Roberson had pleaded guilty to three cocaine crimes. His sentence relied on an enhancement for cocaine base. But after his appeal, the Sentencing Commission revised the relevant Guideline to define "cocaine base" as crack. *Id.* at 414. Then Roberson filed a § 2255 motion, claiming for the first time that the government had not proven that he had distributed *crack* as opposed to another form of cocaine base. *Id.* at 411. Relying on *Bousley*, we held that he had shown cause because "[p]rior to 1993, the sentencing guidelines had not defined the term 'cocaine base' … and no court of appeals had held that this term referred only to 'crack.'" *Id.* at 414. But there, the relevant guideline had changed; only then did a genuinely new argument become available. Here, by contrast, the relevant law—§ 922(g)(1)—is unchanged. So *Roberson* does not apply.

### III. THERE WAS NO NEED FOR AN EVIDENTIARY HEARING ON INNOCENCE

Even if a petitioner cannot show cause and prejudice, he can still overcome a procedural default by showing that, more likely than not, he is actually innocent of the underlying crime. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Lyons claims that the District Court should at least have held an evidentiary hearing on his actual innocence to assess whether he did not know of his conviction status when he possessed the gun the second time around. But that argument fails because the record proves that he knew his status.

A district court "shall" grant a "prompt [evidentiary] hearing" on a §2255 motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). That inquiry has two steps: First, the court must take all of the movant's "nonfrivolous factual claims" as true. *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988). Then, it must decide "whether, on the existing record, those claims that are nonfrivolous conclusively fail to show" that he is entitled to relief. *Id.*

At the first step, Lyons's briefs below reiterated five times that he was actually innocent. The District Court properly discounted these "passing" assertions as conclusory. App. 11. Lyons never asserted that he was ignorant of his status, let alone gave any reason to believe that. And at the second step, the record conclusively forecloses his actual-innocence claim. Section 922(g) sweeps in predicate offenses punishable by more than a year in prison, but carves out an exception for state misdemeanors punishable by no more than two years. 18 U.S.C. §921(a)(20)(B). The plea-hearing record for Lyons's predicate offense shows that he knew what his status would be. At the plea colloquy, the judge advised Lyons that the charge "is a misdemeanor in the first degree which means that [it] is punishable by five years in prison." App. 148. Lyons said he understood that. The judge also warned him that, as a result of the conviction, he "c[ould]n't have a gun"; Lyons said he understood that too. App. 152. Because Lyons knew his conviction status, the District Court properly denied him an evidentiary hearing on actual innocence.

Facing this adverse record, Lyons resorts to speculation. For instance, he complains that the state sentencing-guidelines

12

form showed only the statutory-maximum sentence of eighty-four months for the felony offense he was originally charged with, not the misdemeanor to which he pleaded guilty. But there is no way that a form listing a seven-year maximum could have misled him to believe that his maximum was two or less. Lyons also hints that he might not have remembered his status when he possessed the gun again, a year and five months after his state guilty plea, or that he might have robotically answered the first judge's questions without understanding them. But he floats these far-fetched hints without any evidence. These are exactly the kind of frivolous assertions, contradicted by the record, that courts need not credit. *See Arrington*, 13 F.4th at 334.

\* \* \* \* \*

Sometimes, our legal system's balance of fairness against finality requires us to preserve convictions reached before a crime's elements were clarified. Here, logic, precedent, and common sense require us to preserve Lyons's federal conviction as final. So we will AFFIRM the District Court's denial of his § 2255 motion without an evidentiary hearing.

*Counsel for Appellant*
Stacie M. Fahsel     [Argued]
FEDERAL PUBLIC DEFENDER'S OFFICE

*Counsel for Appellee*
Jonathan R. Bruno   [Argued]
Laura S. Irwin
U.S. ATTORNEY'S OFFICE